IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Ricky Morrison**<br>2294 Hamilton Avenue<br>Poland, Ohio 44514<br><br>               Plaintiff,<br><br>   v.<br><br>**Mahoning County**<br>c/o Mahoning County Board of Commissioners<br>120 Market Street<br>Youngstown, Ohio 44503<br><br>**Carol Rimedio-Righetti** (in her official and personal capacities)<br>Mahoning County Commissioner<br>21 West Boardman Street<br>3rd Floor, Administration Building<br>Youngstown, Ohio 44503<br><br>**David Ditzler** (in his official and personal capacities)<br>Mahoning County Commissioner<br>21 West Boardman Street<br>3rd Floor, Administration Building<br>Youngstown, Ohio 44503<br><br>**Anthony Traficanti** (in his official and personal capacities)<br>Mahoning County Commissioner<br>21 West Boardman Street<br>3rd Floor, Administration Building<br>Youngstown, Ohio 44503<br><br>**Gina DeGenova** (in her official and personal capacities)<br>Mahoning County Prosecuting Attorney<br>21 West Boardman Street<br>6th Floor, Administration Building<br>Youngstown, Ohio 44503<br><br>      and | Case No.<br><br>Judge |

| | |
|---|---|
| **Audrey Tillis** (in her official and personal capacities)<br>Mahoning County Administrator<br>21 West Boardman Street<br>3rd Floor, Administration Building<br>Youngstown, Ohio 44503<br><br>        Defendants. | |

### COMPLAINT WITH JURY DEMAND

### NATURE OF ACTION

1.      This is a civil-rights action for violations of the United States Constitution under 42 U.S.C. § 1983 (including violations of the First and Fourteenth Amendments to the Constitution), with pendent claims for violations of Ohio law, including statutes establishing civil liability for criminal acts including intimidation, tampering with records, tampering with evidence, telecommunication fraud, bribery, interference with civil rights, dereliction of duty, and failure to report crimes; and violations of Ohio's Open Meetings Act.

2.      Plaintiff Ricky Morrison, a Mahoning County maintenance worker, engaged in constitutionally protected free speech, freedom of association, freedom of assembly, and petitioning his government by attending—as a private citizen—a county-elections-board meeting in support of a campaign-challenger to incumbent Defendant Mahoning County Commissioner Carol Rimedio-Righetti. After he did so, she and her fellow Commissioner David Ditzler, and Defendant Mahoning County Administrator Audrey Tillis—flouting Ohio's Open Meetings Act in a secret meeting— unlawfully terminated him from his position with Mahoning County.

3.      In the days that followed, Defendant Gina DeGenova (acting Mahoning County prosecutor) went well beyond the role of a normal lawyer by knowingly providing a materially false and fraudulent cover up for Morrison's unlawful termination, as a gratuity to Commissioners Rimedio-

Righetti and Ditzler for their political support. And certain Defendants failed to report felonies as required by law.

4.      Alternatively, Rimedio-Righetti, Ditzler, Traficanti, and Tillis are liable for failure to train and supervise, which resulted in Morrison's unlawful termination.

**PARTIES**

5.      Plaintiff Ricky Morrison is a maintenance worker with Mahoning County. He resides in Poland, Ohio, located in Mahoning County. He is afflicted with cancer.

6.      Defendant Mahoning County is a political subdivision as defined in Ohio Rev. Code § 2744.01. Its Board of Commissioners is a "public body" subject to Ohio's Open Meetings Act, R.C. 121.22(B)(1)(a). Mahoning County employs Rimedio-Righetti, Ditzler, Traficanti, Tillis, and, through the Prosecutor's Office, DeGenova, and is vicariously liable for acts and omissions taken under its customs, policies, or practices. Mahoning County is also responsible for training and supervising its employees in carrying out their duties in a lawful manner.

7.      Defendant Carol Rimedio-Righetti is a Mahoning County Commissioner and at all relevant times was acting under color of state law. She resides in Mahoning County. She is sued in both her official and personal capacities.

8.      Defendant David Ditzler is a Mahoning County Commissioner and at all relevant times was acting under color of state law. He resides in Mahoning County. He is sued in both his official and personal capacities.

9.      Defendant Anthony Traficanti is a Mahoning County Commissioner and at all relevant times was acting under color of state law. He resides in Mahoning County. He is sued in both his official and personal capacities.

10.     Defendant Gina DeGenova is the acting Mahoning County prosecuting attorney and at all relevant times was acting under color of state law. She resides in Mahoning County. She is sued in both her official and personal capacities.

11.     Defendant Audrey Tillis is the Mahoning County administrator and at all relevant times was acting under color of state law. She resides in Mahoning County. She is sued in both her official and personal capacities.

## JURISDICTION AND VENUE

12.     This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1343, and 2201, for federal claims under 42 U.S.C. 2000e *et seq.* and 42 U.S.C. §§ 1983 and 1988, which provide for attorney and expert fees. This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

13.     This Court has personal jurisdiction over the Defendants, who reside in and conduct business in this District.

14.     Venue is proper under 28 U.S.C. § 1391, because the events giving rise to the claims took place within this District.

## FACTUAL BACKGROUND

**Ricky Morrison is forced to close his business after being diagnosed with bladder cancer and begins treatment.**

15.     In 1998, Morrison started his own landscaping business. Over the years, his business grew and became more successful.

16.     Unfortunately, on May 16, 2022, Morrison was diagnosed with bladder cancer. On June 10, 2022, Morrison underwent surgery to remove part of his bladder. Only time will tell if the surgery was successful.

17.     Due to the cancer diagnosis and ensuing treatment, Morrison could not perform the necessary functions that came with running his own landscaping business. For example, he could no

longer ride the mowers for fear the movement would rupture his bladder. And he could no longer have contact with certain landscaping chemicals.

18.     Having been forced to sell his business, Morrison desperately needed other employment— preferably one that carried medical benefits.

19.     Fortunately, Mahoning County was hiring for a position in its maintenance department.

20.     Based on information and belief, Morrison was one of only two applicants for the position.

21.     Ultimately, Morrison was hired for the position and began his 120-day probationary period on September 12, 2022.

22.     During this time, Morrison performed exceptionally well, was on time every day, was never disciplined, and even worked extra hours when his employer needed additional assistance.

23.     Conversely, another co-worker hired around the same time as Morrison did not perform to such a level. This other co-worker was repeatedly reprimanded for being late for work.

24.     When the County hired Morrison, Traficanti knew that Morrison had cancer and was undergoing treatment.

**Ricky Morrison exercises his First Amendment rights when he attends a public meeting on his own private time.**

25.     In or about July 2022, Morrison, as a private citizen, posted a Facebook message supporting candidate-for-Mahoning-County-Commissioner Geno DiFabio in his campaign against Defendant Rimedio-Righetti. In early November 2022, before the election, a co-worker of Morrison's told him that Rimedio-Righetti was aware of the post and unhappy about it.

26.     On Monday, November 28, 2022, Morrison, as a private citizen and in his off-work hours, attended a public meeting at the Mahoning County Board of Elections. The meeting, set to begin at 3:00 pm, was convened to address the counting of absentee and provisional ballots in the hotly contested 2022 Mahoning County Commissioner race between incumbent Rimedio-Righetti and her challenger DiFabio.

27. The meeting was not during Morrison's scheduled workday—Monday through Friday from 4:00 am to 12:00 pm. Nor was his attendance part of his ordinary or *ad hoc* job duties as a county maintenance worker.

28. Morrison arrived at the meeting and took a seat next to DiFabio, whom Morrison had, as a private citizen, supported for the Commissioner's position.

29. Rimedio-Righetti was seated directly behind DiFabio and saw Morrison sitting with and speaking with him. DiFabio and Morrison discussed the election and counting of the votes.

30. During the meeting, the elections board announced that Rimedio-Righetti was successful in her re-election bid, winning by a mere 137 votes. The narrow margin of victory prompted a mandatory recount.

31. As Morrison and Rimedio-Righetti were leaving, Morrison congratulated her on her re-election.

32. Rimedio-Righetti told Morrison that he looked familiar.

33. He told her that he worked for Mahoning County's maintenance department.

34. Rimedio-Righetti said, "Are you Dave Bucci?"

35. Morrison responded, "No. I'm Ricky—" and before he could say his last name, Rimedio-Righetti responded, in disgust, "Ricky Morrison. You work for us. Unreal!" Rimedio-Righetti then abruptly turned away and exclaimed loudly and in irritation, "Wow!" She walked away without saying another word to Morrison.

36. Morrison's presence, electoral discussion, and association with DiFabio apparently spoke volumes.

**Commissioners Carol Rimedio-Righetti and David Ditzler, together with County Administrator Audrey Tillis, terminate Ricky Morrison in retaliation for his having exercised his First Amendment rights by supporting DiFabio.**

37.    On Friday, December 2, 2022, Morrison was called into his supervisor Allan Landfried's office. Landfriend reports up to Defendant Tillis.

38.    With the Christmas holiday season underway, Landfried informed Morrison that "the Commissioners" had decided to terminate him. When Morrison asked why, Landfried could provide no reason and expressed similar shock and dismay at Morrison's termination. Landfried even agreed to pay Morrison for the entire day's work even though he had only worked half of his shift.

39.    Landfried presented Morrison with a pre-prepared termination letter Landfried had signed. Landfried required Morrison to sign his acknowledgement of the termination. The letter was on the Board of Mahoning County Commissioners' letterhead.[1] Copied on the letter were Karen U'Halie, director of human resources; Jacquelyn Montgomery, senior OBM analyst; Ryan Stanko, OBM budget analyst; Mark Bartol, president of AFSCME Local 1156; and Phil Naples, vice president of AFSCME Local 1156. And the letter was copied to Morrison's Mahoning County personnel file, which is a matter of public record.

40.    After Morrison signed the letter, Landfried made a photocopy of it and returned the original to Morrison. Morrison was required to return his county equipment and keys and retrieve his personal belongings. He was then escorted out of the building in what he felt to be a humiliating walk of shame.

41.    As explained further below, Morrison was shocked and devastated by the Commissioners' conduct. Not only were he and his family relying on his income from the job, but he was also relying on the health insurance for his ongoing cancer treatment.

---

[1] Letter (purportedly) from Landfried to Morrison dated Dec. 2, 2022 (attached as Ex. 1).

42.    Morrison called DiFabio and informed him of the firing.

43.    DiFabio contacted Mahoning County Commissioner Anthony Traficanti for an explanation. Traficanti confirmed that Morrison was terminated because he was sitting and talking with DiFabio at the public hearing, and emphasized, "You know what you know."

44.    DiFabio called Morrison and informed him about his conversation with Traficanti.

45.    On Saturday, December 3, 2022, Traficanti called Morrison directly.  Morrison's wife, Tara, listened to the telephone call.

46.    During the call, Traficanti apologized for the firing and said he felt "horrible" because Morrison was such a "good kid."

47.    Traficanti acknowledged speaking to DiFabio the day before and was aware that DiFabio had relayed the information to Morrison.

48.    Traficanti stated the Commissioners met in an "executive session" on "Thursday," which would have been December 1, 2022. And, during this meeting, Traficanti said, Rimedio-Righetti and Ditzler voted to terminate Morrison, while Traficanti voted against the termination. Traficanti said they were "screaming back and forth" and "I told them this isn't right."

49.    Traficanti said he "walked out" and "slammed the door."

50.    Morrison asked Traficanti why he was terminated and Traficanti stated "you know that— you know," referring to his attendance at the Board of Elections meeting, support of DiFabio, and association and speaking with DiFabio at the Board of Elections meetings earlier that week.

51.    Traficanti even offered to help Morrison find another job somewhere and told him that he could come to his office anytime to visit.

52.    The telephone call between Traficanti and Morrison lasted over 20 minutes.

53.    The "executive session" discussed by Traficanti was held in violation of Ohio's Open Meetings Act. During the Commissioners' meeting that Thursday, December 1, 2022—contrary to

the mandates of that Act (Ohio Rev. Code § 121.22(G) and (H))—no vote was taken to go into executive session and no public vote was taken on Morrison's termination. Defendants Rimedio-Righetti and Ditzler decided to fire Morrison in secret.[2]

54.    Ironically, that meeting was not the first one held in secret. It was the Mahoning County Board of Commissioners's habit to hold secret meetings to engage in improper and questionable discussions, in violation of Ohio law requiring that meetings be held in public so that the Commissioners' conduct can be scrutinized.

55.    The local newspaper, *The Vindicator*, reported that another such secret meeting occurred as recently as November 17, 2022 during which the Commissioners, then-Prosecuting Attorney Paul Gains, Defendant DeGenova, and others were present.[3] Based on information and belief, Gains's retirement and DeGenova's appointment were discussed during that secret meeting.

56.    Based on information relayed again by Traficanti to others, during the November 17, 2022 secret meeting, Gains threatened to make public damaging information about the Commissioners if they did not vote to appoint DeGenova as acting prosecuting attorney and to support her for the appointment on January 7, 2023 by the Mahoning County Democratic Party. Following those threats, the Commissioners appointed DeGenova as acting prosecuting attorney at their November 22, 2022 meeting.

57.    Based on information and belief, the Commissioners are not the only people who Gains has influenced to support DeGenova in her bid to obtain the Democratic Party's appointment.

---

[2] Video of Mahoning County Commissioners' Board Meeting (Dec. 1, 2022), https://youtu.be/h8Oxj9AURCc.com.

[3] Ed Runyan, *Officials' gathering scrutinized*, THE VINDICATOR (Dec. 11, 2022), https://www.vindy.com/news/local-news/2022/12/officials-gathering-scrutinized/; *see also Commissioners are forgetting transparency*, THE VINDICATOR (Dec. 18, 2022), https://www.vindy.com/opinion/editorials/2022/12/commissioners-are-forgetting-transparency/.

58.     As a matter of habit, the Board of Commissioners consistently has the prosecuting attorney or one of the assistant prosecutors attend Commissioners' meetings—even the secret ones that every competent prosecutor knows are illegal.

59.     At least two meetings in less than one month, held in secret, during which illicit behavior occurred at the hands of multiple Mahoning County public officials, is common practice and routine in Mahoning County government.

**Defendants try to cover-up their illicit (criminal) behavior and civil-rights violations by engaging in further illicit (criminal and unethical) acts.**

60.     On December 9, 2022, Morrison's counsel sent a letter via email to Commissioners Rimedio-Righetti, Ditzler, and Traficanti demanding Morrison's immediate and unconditional reinstatement from his unlawful termination in retaliation for exercising his First Amendment rights.[4]

61.     Following the letter's delivery, on December 11, 2022, *The Vindicator* reported the following regarding Rimedio-Righetti's comments on the matter:[5]

   a.   "Rimedio-Righetti said she wouldn't comment on Morrison, but added: 'Not everything you read in a letter is completely accurate.' Rimedio-Righetti said she hasn't read Chandra's letter."

   b.   "He said who he was and I said, 'Oh, wow,' Rimedio-Righetti said."

   c.   "She said the commissioners didn't fire Morrison and that he was on probation."

62.     In that same article, *The Vindicator* reported the following regarding Ditzler's comments:[6]

---

[4] Letter from S. Chandra to C. Rimedio-Righetti, *et al.* (Dec. 9, 2022) (attached as Ex. 2).

[5] David Skolnick, *Fired worker: Dismissal politically driven*, THE VINDICATOR (Dec. 11, 2022), https://www.vindy.com/news/local-news/2022/12/fired-worker-dismissal-politically-driven/.

[6] *Id.*

     a.   "Commissioner David Ditzler, who read Chandra's letter, also said the commissioners didn't vote on firing Morrison and that he was on probation."

     b.   "The decision rests with the county administrator and the facilities manager, Ditzler said, adding that those two 'are the most apolitical people in the world.'"

     c.   "Ditzler said: 'It's an employment issue. I can't talk about it at all.'"

     d.   "When asked if it was in retaliation, Ditzler said, 'No, it wasn't retaliation, absolutely not.'"

63.     Traficanti made no statements to the media, but his statements to DiFabio and Morrison starkly conflict with Rimedio-Righetti and Ditzler's public statements.

64.     On December 11, 2022, following Rimedio-Righetti and Ditzler's comments to the media, Morrison's counsel sent a taxpayer-demand[7] email to DeGenova[8] demanding Morrison's unconditional reinstatement to his job, to mitigate the irreparable harm he was suffering from being deprived of health insurance while afflicted with cancer. The letter also demanded that county officials preserve evidence.

65.     On December 12, 2022, DeGenova acknowledged counsel's email, saying she was "looking into" the issue with Morrison's employment that counsel had raised.

66.     On December 13, 2022, DeGenova sent an email to Morrison's counsel finding Morrison's termination "void *ab initio*" and instructing him to return to work the next day.[9] But DeGenova, who claimed to have performed an "investigation" went well beyond what a normal lawyer would do. Instead of simply saying that Morrison was reinstated and generally demurring on the issue of liability, DeGenovo went so far as to excuse the Commissioners' unlawful behavior, falsely

---

[7] *See* Ohio Rev. Code § 733.56–733.59 (authority for Ohio taxpayer demands and lawsuits when officials are abusing municipal corporate powers).

[8] Letter from S. Chandra to G. DeGenova (Dec. 11, 2022) (attached as Ex. 3).

[9] Email from G. DeGenova to S. Chandra (Dec. 13, 2022) (attached as Ex. 4).

exonerate any role in Morrison's termination, and falsely throw Defendant Tillis under the bus for supposedly having acted exclusively without any authority to do so:

> Upon receipt of your correspondence, as Prosecutor, I conducted an investigation into the circumstances surrounding the December 2, 2022 "termination" of your client, Ricky Morrison. My investigation revealed that the decision to terminate Mr. Morrison was made by the county administrator, not the Board of Commissioners, and that that [*sic*] the county administrator's action was not politically motivated.
>
> A Board of County Commissioners may only act as a Board and through formal resolution. Because Mr. Morrison's "termination" was initiated by the county administrator and no Board action was taken, Mr. Morrison's "termination" is void *ab initio*. The Commissioners will not ratify the action taken by the county administrator.  Accordingly, please notify Mr. Morrison that he should report to work tomorrow, December 13, 2022. He will suffer no loss in pay or interruption of health care benefits.

67.     A normal lawyer, realizing the County's exposure, would simply acknowledge Morrison's reinstatement. The lawyer wouldn't claim to have conducted an "investigation" and commit to a factually and legally false narrative that would contradict the account of one statutory-client officeholder—here, Commissioner Traficanti, and scapegoat another client, County Administrator Tillis.

68.     Instead, Defendant DeGenova's unusual conduct was calculated to corrupt and improperly influence Defendants Rimedio-Righetti and Ditzler by giving them a valuable thing or benefit, namely covering up their personal exposure to public opprobrium, civil liability, and individual punitive damages (for which there is no indemnification from the county or its insurer, and no discharge in bankruptcy) resulting from the retaliatory conduct. DeGenova did so in consideration for their past and expected continued support for her appointment as prosecutor.

69.     As part of this gratuity, Defendant DeGenova then sent the statement in the email to the media for no legitimate reason.[10]  DeGenova's act of disseminating the self-serving and falsehood-

---

[10] *See, e.g.*, Robert McFerren, *Mahoning County employee gets job back after being wrongly terminated*, WFMJ Channel 21 (Dec. 13, 2022, 5:31 PM), https://www.wfmj.com/story/47930061/mahoning-county-employee-gets-job-back-after-being-wrongly-terminated; David Skolnick, *Fired county worker who backed DiFabio reinstated*, THE

ridden email was not done as part of this action, but, rather, was an attempt to save face and rehabilitate the public's view of Defendants' illicit behavior.

70.     Defendant DeGenova's email, statement, and related acts neither bore any reasonable relationship to any pending judicial proceeding, nor occurred during the pendency of a judicial proceeding.

71.     Defendant DeGenova's email, statement, and related acts failed to facilitate the disclosure of pertinent information and failed to help ascertain the truth. Rather, they had the opposite effect. DeGenova's email and statement exonerated and excused wrongdoing by public officials. DeGenova's email and statement, which were published, caused pertinent information to be hidden and covered-up the truth. It also prevented at least one witness (Traficanti) from speaking publicly, because DeGenova had established the (false) party line to which all officials were expected to hew, regardless of its falsity.

72.     Defendant DeGenova's actions were done to interfere with the truth-seeking ability of Morrison. Consequently, DeGenova's email hindered the production of the proper result.

73.     Defendant DeGenova, who is the acting prosecuting attorney, was voted into the position by the Commissioners she now seeks to protect. DeGenova desperately needs the Commissioners' continued support in her bid to obtain the appointment from the Mahoning County Democratic Party at their scheduled January 7, 2023 meeting.

74.     In her email, DeGenova claimed to have conducted an "investigation," yet failed to provide any details of the purported investigation, such as to whom she spoke and what documents she reviewed. Her entire "investigation" was supposedly completed in just one day.

---

VINDICATOR (Dec. 14, 2022), https://www.vindy.com/news/local-news/2022/12/fired-county-worker-who-backed-DiFabio-reinstated/.

75.     Defendant DeGenova never spoke with Morrison or his counsel as part of her "investigation." A reasonably competent and qualified attorney would know to interview or seek to interview the victim making allegations before drawing conclusions about an incident.

76.     If DeGenova, during her purported "investigation," spoke with Commissioner Traficanti—which any competent lawyer investigating whether the Board engaged in retaliation would do—or was present or had an assistant in the illegal Board meeting, then she knew full well that her statement exonerating the Commissioners was false. If she didn't interview Traficanti, then she didn't really perform an "investigation" of Morrison's allegations.

77.     DeGenova's conclusion, which conflicts with Traficanti's statements, lends credence to one of several scenarios, including:

   a.  **Scenario 1**: DeGenova conducted no investigation at all and simply authored a false narrative to exonerate Rimedio-Righetti and Ditzler.

   b.  **Scenario 2**: DeGenova failed to interview Traficanti, who previously stated that Rimedio-Righetti and Ditzler orchestrated and voted for Morrison's firing in retaliation for Morrison's attendance at the Board of Elections meeting, his support of and association with DiFabio, and his election-related discussions with DiFabio.

   c.  **Scenario 3**: DeGenova interviewed Traficanti but disregarded what Traficanti stated had occurred.

   d.  **Scenario 4**: DeGenova or one of her assistant prosecutors were in the illegal December 1, 2022 secret Commissioners' meeting, witnessed Defendant Rimedio-Righetti and Ditzler's misconduct, and DeGenova was personally well aware from first-hand or office knowledge that what she was writing was false.

78.     Based on information and belief, DeGenova planned to exonerate Rimedio-Righetti and Ditzler the entire time, regardless of the evidence, or her own first-hand knowledge.

79.    DeGenova's email is a materially false and fraudulent writing for the following reasons:

a.    DeGenova claimed "the decision to terminate Mr. Morrison was made by the county administrator, not the Board of Commissioners…" This directly conflicts with Traficanti's statement that Rimedio-Righetti and Ditzler both voted to terminate Morrison, under Traficanti's opposition.

b.    DeGenova claimed the termination "was not politically motivated." This directly conflicts with Traficanti's statement that the termination was based on Morrison's attendance at the Board of Elections meeting, his support of and association with DiFabio, and his election-related discussions with DiFabio—Rimedio-Righetti's opponent in the 2022 Commissioner's race.

c.    DeGenova claimed "Because Mr. Morrison's 'termination' was initiated by the county administrator and no Board action was taken, Mr. Morrison's 'termination' is void *ab initio*." The claim that the county administrator initiated the termination directly conflicts with the Board's March 26, 2020 Resolution 20-03-029, which granted the county administrator the ability to hire and fire county employees.[11] DeGenova's claim also conflicts with Ditzler's comments to *The Vindicator* that "the decision rests with the county administrator and the facilities manager…"[12] (Commissioners have not yet complied with a public-records request for any resolution rescinding or modifying the authority they delegated to Tillis. Nor have they yet, as requested, produced the metadata

---

[11] Resolution 20-03-029 dated Mar. 26. 2020 at 2 (attached as Ex. 5) ("BE IT FURTHER RESOLVED, that the Board of County Commissioners, pursuant to its authority granted by R.C. 305.29, hereby appoints Audrey Tillis to serve as County Administrator during this time of emergency and, pursuant to R.C. 305.30, hereby delegates to her and authorizes her to take any and all action, and to exercise all powers granted under R.C. 305.30, as she determines to be necessary for the continuity of county operations during this time of crisis.").

[12] David Skolnick, *Fired worker: Dismissal politically driven*, THE VINDICATOR (Dec. 11, 2022), https://www.vindy.com/news/local-news/2022/12/fired-worker-dismissal-politically-driven/.

for the termination letter given to Morrison, to show whose hands the letter passed through.)

80.     On Thursday, December 15, 2022, following the Commissioners' meeting, Traficanti spoke to an individual, with whom he and Morrison are both friendly. Traficanti instructed this individual to have Morrison contact him.

81.     That night, Morrison and Traficanti spoke twice on the phone for over 13 minutes.

82.     During the first call, Traficanti made the following admissions:

a.  "I just wanted to come up and shake your hand and welcome you back and let you know that I'm glad you got reinstated."

b.  "And I never wanted you to leave to begin with, as you already know."

c.  "And, you know, there's more that I— I wanted to say and I want to say, but I can't now because of the litigation. But one day I will be able to have my say. But I think you know with your whole heart I was always in your corner."

d.  "I didn't support this, and you know that, Ricky."

e.  "And I think in the end the truth will definitely come out…"

f.  "And you know your buddy Geno really did a nice job for you today. I just want you to know he's really stuck up pretty hard for you, so…"

g.  "She— she [Tillis] is the county administrator. She used to be our budget director, and now she's the county administrator. And that is very— very odd about Audrey, okay, but like I said again, I don't know how that all happened. I had said my peace, and it was a big argument, and I had left, so I don't know. I wouldn't take part in that any further, you understand me?"

h.  "Oh, yeah, absolutely." (Said in response to Morrison stating, "I know you said that you ran out the door and you slammed the door because you were mad.")

    i.    "You know, that's— that's the whole thing that— you know, the truth will come out, but right now because of the litigation, I wish I could say more, but I can't." (There was no litigation.)

    j.    "You'll hardly ever see her [Tillis]. She's up on our floor and inside her office. She is administrator. She had authority to hire and fire, like, during COVID, and there was a resolution that we gave her to allow her to do that. But honestly, Ricky, the truth is going to come out."

    k.    "You're a good worker."

83.     During the second call, Traficanti made the following admissions:

    a.    "Ricky, I don't want to get into it because of the litigation right now, okay? I can only say what I said to you, okay, at this point." (Said in response to Morrison asking who was present at the meeting when Rimedio-Righetti and Ditzler voted to terminate him.)

    b.    "I just— I just don't want to because of the liability right now. But— you know, if you ask Allan sometime, say, Allan, what went on in that room? Could you tell me?" (Said in response to Morrison asking whether his supervisor Allan Landfried was present at the meeting when Rimedio-Righetti and Ditzler voted to terminate him.)

    c.    "Right. Right." (Said in response to Morrison stating that his supervisor Allan Landfried said "this was the commissioners' decision, not my decision.")

    d.    "And listen, I'm trying to be as decent as I can to you and understand all this, because I'm not happy about it either. And I wish I could say more, but because of the litigation, you know, I am not in a position to say anymore about that, okay." (Said in response to Morrison asking if Audrey Tillis and Gina DeGenova were present at the meeting when Rimedio-Righetti and Ditzler voted to terminate him.)

e. "I can tell you he always said— because, you know, I asked him, and he said, oh, he works— is impeccable, does a very good job. He likes you." (Said in response to Morrison asking whether his supervisor Allan Landfried was involved in the decision to terminate him.)

f. "Yeah. You're a worker. I mean, that's your reputation. I just want you to know that. I think I told you that a while back— even before all this happened that you're a great worker."

84.     If Rimedio-Righetti, Ditzler, and DeGenova's version of events was really truthful, then Traficanti would have simply stated that the "truth *came out*." But he didn't say that. To the contrary, Traficanti stated "the truth will come out"—meaning Defendant DeGenova's publicly disseminated statements were false and fraudulent.

85.     On Saturday, December 17, 2022, Traficanti spoke to former commissioner candidate Geno DiFabio, who Morrison had exercised his constitutional right to support. Traficanti told DiFabio that he could not say much because of the pending litigation and he had to protect "the County's interest," but that "the truth will come out." (Again, there was no pending litigation.)

86.     Traficanti thanked DiFabio, saying that he was "doing the right thing." DiFabio had been repeatedly and publicly decrying the retaliation against Morrison, including speaking on various local radio talk shows, posting on social media, and making statements at the Board of Commissioners' and Board of Elections meetings.

87.     In the days following Morrison's termination and reinstatement, DiFabio made multiple public statements condemning the retaliation against Morrison. DiFabio spoke on several local radio talk shows and made statements at the Board of Elections meeting on December 13, 2022 and at the Commissioners' meeting on December 15, 2022.

88. On December 13, 2022, the Mahoning County Board of Elections officially announced the result of the recount in the Commissioners' race—Rimedio-Righetti won by only 130 votes. Ironically, December 13 was the same date DeGenova announced the results of her purported "investigation."

89. Morrison did not attend the December 13, 2022 meeting at the Mahoning County Board of Elections because of the chilling effect that Defendants' unlawful and retaliatory termination had on him. He very much wanted to do so. But, in part because of his desperate need to support his family and for health insurance, he was terrified.

90. In addition to the public attention garnered by DiFabio's efforts, several news articles appeared in the local newspaper, *The Vindicator*. *The Vindicator* not only ran stories on Morrison, but also on the secret November 17 meeting held by the Commissioners and Prosecutor's Office.

91. Regional media reporting was highly critical of the Commissioners' firing of Morrison and very skeptical—even doubtful—of DeGenova's excuses. This coverage provoked even more admissions and questionable statements by Defendants.

92. On a December 20, 2022, *The Vindicator* reported "Commissioner David Ditzler denies that the Mahoning County commissioners knew that maintenance employee Ricky Morrison was suffering from cancer when they terminated his employment."[13]

93. Ditzler's comment conflicts with the position DeGenova advanced: that Mahoning County Administrator Audrey Tillis was responsible for the termination—not the Commissioners. Ditzler's comment not only confirms that the Commissioners were aware of the decision to fire Morrison when it was ordered, but they were the ones who engineered the termination.

---

[13] Ed Runyan, *Commissioner denies firing was political*, THE VINDICATOR (Dec. 20, 2022), https://www.vindy.com/news/local-news/2022/12/commissioner-denies-firing-was-political/ (cleaned up).

94.     During the week of December 19, 2022 while at a local establishment, Traficanti was asked "who ordered the 'code red'!?"—referring to a local radio talk-show host who questioned who ordered Morrison's termination and referred to it as the "code red." This was a phrase made popular by the Tom Cruise film *A Few Good Men* in which Jack Nicholson is repeatedly questioned about a devastating act that he eventually (spoiler alert) confesses.[14]

95.     Traficanti responded that he knew what they [Rimedio-Righetti, Ditzler, Tillis, and DeGenova] were doing and what was going to happen, but that he withdrew from the situation because he did not agree with them and what they were doing [the unlawful and retaliatory termination and ensuing cover-up]. When pressed for answers, Traficanti told the patrons that he could not say anything more because of the pending litigation.

**Ricky Morrison is emotionally devastated by being fired and losing his living and health insurance.**

96.     As a result of this horrific ordeal, Morrison has suffered devastating harm.

97.     After Morrison's firing, Morrison's young daughter asked to go ice skating with her friends. But Morrison did not allow her to go because the family had been deprived of medical benefits and he feared what would happen if she was injured while ice skating. This was humiliating for him as a father. He did not tell his daughter what he was experiencing.

98.     Morrison did not inform his teenage daughters of his cancer diagnosis because he did not want them to worry. Unfortunately, his daughters learned of their father's cancer from the inevitable media coverage resulting from Defendants' illegal acts. Defendants are seasoned politicians and know that if they act improperly, especially in a manner as egregious as they have here, news coverage is likely to follow.

---

[14] Clip from *A Few Good Men*, https://www.youtube.com/watch?v=aa80_sKNgM4 at 5:58.

99.     The lack of medical benefits and uncertainty of his future ability to obtain cancer treatment caused severe and undue stress upon Morrison.

100.     Even upon his return to work, Morrison has been faced with fear, increased stress, and uncertainty. He is concerned about who all was involved in his unlawful termination and ensuing cover-up. He constantly worries that these same authority figures will plot to cause his demise.

101.     And upon Morrison's return to work on December 14, 2022 following his retaliatory firing, one co-worker orally castigated and harassed him, and acted in a physically threatening manner. On or about December 20, 2022, other co-workers got up and left a lunchroom as soon as Morrison sat down. All of this loss of reputation, stigma, and misery was created by Defendants' actions and was foreseeable.

102.     Morrison has incurred, and will continue to incur, legal fees and expenses to obtain the justice he deserves.

**CLAIMS**

**CLAIM 1**

**FIRST AMENDMENT RETALIATION UNDER 42 U.S.C. § 1983 BY PLAINTIFF RICKY MORRISON AGAINST DEFENDANTS MAHONING COUNTY, CAROL RIMEDIO-RIGHETTI, DAVID DITZLER, AUDREY TILLIS, AND GINA DEGENOVA IN THEIR OFFICIAL AND PERSONAL CAPACITIES**

103.     Plaintiff incorporates all previous allegations.

104.     Political speech lies at "the heart of the First Amendment." *Lane v. Franks*, 134 S. Ct. 2369, 2377 (2014).

105.     Plaintiff Ricky Morrison was a public employee who engaged in First Amendment–protected free speech, free association, free assembly, and the right to petition the government as a private citizen on a matter of public concern. He did so by attending a public meeting at the Mahoning County Board of Elections, sitting, associating with, and discussing the election with candidate Geno DiFabio. His assembly/association/petition with DiFabio, the symbolic speech associated with the

same, and their discussion was not part of his ordinary or *ad hoc* job duties as a maintenance worker for Mahoning County.

106.    Attendance at a public meeting concerning the counting of absentee and provisional ballots is a matter of public concern, as is associating/supporting a political candidate for office and related discussions.

107.    Morrison's attendance at the meeting, association with and support of DiFabio, symbolic speech with his presence, and their election-related discussions were not part of his ordinary or *ad hoc* job duties. Morrison was acting as a private citizen by attending the meeting, associating with DiFabio, and discussing the election with him.

108.    By attending the meeting, associating with DiFabio, and discussing the election, Morrison engaged in constitutionally protected conduct or activity under the First and Fourteenth Amendments.

109.    Defendants Rimedio-Righetti, Ditzler, Tillis, and DeGenova knew Morrison had engaged in constitutionally protected conduct or activity. Morrison's constitutional rights were clearly established and a reasonable public official would have known about them.

110.    Defendants Rimedio-Righetti, Ditzler, Tillis, and DeGenova took adverse actions against Morrison—including all the retaliatory acts described above—that would deter a person of ordinary firmness from continuing to engage in that conduct. These included, but were not limited to:

    a.  Terminating Morrison from his maintenance position with Mahoning County;

    b.  Terminating Morrison's medical benefits;

    c.  Communicating these things to Morrison, stripping him of his County-issue equipment, making him pick up his personal effects, and be publicly escorted from the County building in what Morrison predictably experienced as a humiliating walk of shame;

    d.   Gaslighting Morrison by claiming that his termination was not retaliatory or politically motivated;

    e.   Gaslighting Morrison by claiming that they did not order the termination;

    f.   Gaslighting Morrison by falsely claiming Tillis acted on her own in an unauthorized fashion, outside of her authority, in terminating Morrison, when Rimedio-Righetti and Ditzler (a majority of Commissioners) secretly voted to fire Morrison and directed his firing;

    g.   Forcing Morrison and his family to hire counsel and incur additional expenses to demand his reinstatement and otherwise seek justice;

    h.   Intimidating Morrison from attending the next Board of Elections meeting during which the results of the recount in an election he cared so much about were announced; and

    i.   Placing Morrison in a position where he faced opprobrium from his co-workers.

111.    Defendants Rimedio-Righetti, Ditzler, Tillis, and DeGenova took the above-mentioned adverse actions while acting under color of state law.

112.    Morrison's First Amendment–protected assembly, association, petition, and speech were a substantial and motivating factor[15] in the adverse actions he suffered at the hands of Defendants Rimedio-Righetti, Ditzler, Tillis, and DeGenova.

113.    Defendants Rimedio-Righetti, Ditzler, Tillis, and DeGenova lack any countervailing interest that outweighs Morrison's interest in attending a public meeting, associating with a political candidate, and election-related speech.

---

[15] *See, e.g.*, *Laster v. City of Kalamazoo*, 746 F.3d 714, 733 (6th Cir. 2014).

114.    The contours of Morrison's right to assembly, association, and speech on matters of public concern as a private citizen were sufficiently clearly established at the time he exercised it to apprise a reasonable public employee that retaliating against him for exercising those rights was unlawful.

115.    Defendants Rimedio-Righetti, Ditzler, Tillis, and DeGenova were at all relevant times sufficiently empowered Mahoning County officials that their acts constitute the customs, policies, and practices of Mahoning County. Defendants Rimedio-Righetti, Ditzler, and DeGenova are the highest-ranking officials holding electoral offices in the county, and Tillis in the highest-ranking senior administrator. All are policymakers.

116.    As a direct and proximate result of this unlawful campaign of retaliation that Mahoning County endorsed and adopted as its own, Morrison has suffered and will continue to suffer economic and non-economic damages for which Defendants Mahoning County, Rimedio-Righetti, Ditzler, Tillis, and DeGenova are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

117.    Defendants Mahoning County, Rimedio-Righetti, Ditzler, Tillis and DeGenova's acts were malicious, in bad faith, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 2
**INTIMIDATION USING A FALSE OR FRAUDULENT WRITING UNDER OHIO REV. CODE §§ 2921.03(A) AND (C) AND CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE § 2307.60 (INCORPORATING R.C. 2921.03) BY PLAINTIFF RICKY MORRISON AGAINST DEFENDANT GINA DEGENOVA IN HER PERSONAL CAPACITY**

118.    Plaintiff incorporates all previous allegations.

119.    Under the relevant part of Ohio Rev. Code § 2921.03(A), "No person…, by filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner, shall attempt to influence, intimidate, or hinder a public

servant, a party official, or an attorney or witness involved in a civil action or proceeding in the discharge of… the duties of the public servant, party official, attorney, or witness." (Cleaned up.)

120.     Ohio Rev. Code § 2921.03(C) provides for a civil cause of action for damages, including attorney fees and costs, for violations of Ohio Rev. Code § 2921.03(A).

121.     Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action. Violations of Ohio Rev. Code § 2921.03(A) are criminal acts, indeed felonious, under § 2921.03(B).

122.     Defendant DeGenova's statements contained in her December 13, 2022, email were materially false and fraudulent writings. Such statements included, but are not limited to:

   a.   "…I conducted an investigation into the circumstances surrounding the December 2, 2022 'termination' of your client, Ricky Morrison."

   b.   "My investigation revealed that the decision to terminate Mr. Morrison was made by the county administrator, not the Board of Commissioners…"

   c.   "…the county administrator's action was not politically motivated."

   d.   "…Mr. Morrison's 'termination' was initiated by the county administrator and no Board action was taken…"

   e.   "The Commissioners will not ratify the action taken by the county administrator." (They directed the actions.)

123.     Defendant DeGenova also recorded and used these materially false and fraudulent writings with malicious purpose, in bad faith, and in a wanton and reckless manner, to attempt to influence, intimidate, and hinder public servants in the discharge of their duties, including but not limited to Defendant Traficanti, by falsely exonerating Rimedio-Righetti, Ditzler, and Tillis's unlawful and retaliatory termination of Morrison.

124.    Defendant DeGenova also recorded and used these materially false and fraudulent writings with malicious purpose, in bad faith, and in a wanton and reckless manner, to attempt to influence and hinder public servants in the discharge of their duties, including but not limited to jurors and judges in potential proceedings, by falsely exonerating Rimedio-Righetti, Ditzler, and Tillis's unlawful and retaliatory termination of Morrison.

125.    Defendant DeGenova recorded and used these materially false and fraudulent writings with malicious purpose, in bad faith, and in a wanton and reckless manner, to attempt to influence, intimidate, and hinder Democratic Party officials in the discharge of their duties, namely the decision to appoint a prosecuting attorney on January 7, 2023, by falsely exonerating her endorsers' Rimedio-Righetti and Ditzler's unlawful and retaliatory termination of Morrison and avoiding public knowledge of her office's and her own role in Morrison's termination.[16]

126.    Defendant DeGenova recorded and used these materially false and fraudulent writings with malicious purpose, in bad faith, and in a wanton and reckless manner, to attempt to influence, intimidate, and hinder Morrison's attorneys and witnesses involved in a potential civil action or proceeding (including Morrison and others with knowledge from coming forward) in the discharge of in the discharge of their duties, by falsely exonerating Rimedio-Righetti, Ditzler, and Tillis's unlawful and retaliatory termination of Morrison.

127.    As a direct and proximate result of these actions, Morrison has suffered and will continue to suffer economic and non-economic damages for which DeGenova is liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

---

[16] *See, e.g.*, *Buddenberg v. Weisdack*, 939 F.3d 732 (6th Cir. 2019) (holding generally that lawyers who participate in First Amendment retaliation can be held liable).

128.     Defendant DeGenova's acts were malicious, in bad faith, willful, egregious, and worthy of substantial sanction to punish and deter her and others from engaging in this type of unlawful conduct.

## CLAIM 3
### CIVIL LIABILITY FOR CRIMINAL ACTS (TAMPERING WITH RECORDS) UNDER OHIO REV. CODE §§ 2307.60 AND 2913.42(A)(1) AND (2) BY PLAINTIFF RICKY MORRISON AGAINST DEFENDANT GINA DEGENOVA IN HER PERSONAL CAPACITY

129.     Plaintiff incorporates all previous allegations.

130.     Under Ohio Rev. Code § 2913.42(A)(1)"No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall… [f]alsify… any writing, computer software, data, or record" or, under § 2913.42(A)(2) "[u]tter any writing or record, knowing it to have been tampered with as provided in division (A)(1) of this section."

131.     Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action. Violations of Ohio Rev. Code § 2913.42(A)(1) and (2) are criminal acts, indeed felonious under § 2913.42(B)(4), especially where the writing, data, computer software, or record is kept by or belongs to a local or state governmental entity like Mahoning County.

132.     Defendant DeGenova, with no privilege to do so and with purpose to defraud and knowing she was facilitating a fraud, falsified, with her December 13, 2022 email, a writing, computer software, data, or record. The false statements included, but were not limited to:

   a.   "…I conducted an investigation into the circumstances surrounding the December 2, 2022 'termination' of your client, Ricky Morrison."

   b.   "My investigation revealed that the decision to terminate Mr. Morrison was made by the county administrator, not the Board of Commissioners…"

   c.   "…the county administrator's action was not politically motivated."

    d.   "…Mr. Morrison's 'termination' was initiated by the county administrator and no Board action was taken…"

    e.   "The Commissioners will not ratify the action taken by the county administrator." (They directed the actions.)

133.    Defendant DeGenova, with no privilege to do so and with purpose to defraud and knowing she was facilitating a fraud, uttered the tampered writing or record to Morrison's counsel and to the media.

134.    The writing, data, computer software, or record by DeGenova is kept by or belongs to a local or state governmental entity, namely, Mahoning County.

135.    As a direct and proximate result of these actions, Morrison has suffered and will continue to suffer economic and non-economic damages for which DeGenova is liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

136.    Defendant DeGenova's acts were malicious, in bad faith, willful, egregious, and worthy of substantial sanction to punish and deter her and others from engaging in this type of unlawful conduct.

### CLAIM 4
### CIVIL LIABILITY FOR CRIMINAL ACTS (TAMPERING WITH EVIDENCE) UNDER OHIO REV. CODE §§ 2307.60 AND 2921.12(A)(2) BY PLAINTIFF RICKY MORRISON AGAINST DEFENDANT GINA DEGENOVA IN HER PERSONAL CAPACITY

137.    Plaintiff incorporates all previous allegations.

138.    Under Ohio Rev. Code § 2921.12(A)(2), no person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall make, present, or use any record, document, or thing, knowing it to be false and with purpose to corrupt the outcome of any such proceeding or investigation.

139.    Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action. Violations of Ohio Rev. Code § 2921.12(A) are criminal acts, indeed felonious under § 2921.12(B).

140.    Defendant DeGenova's statements contained in her December 13, 2022, email were materially false and fraudulent writings. Such statements included, but are not limited to:

  a.  "…I conducted an investigation into the circumstances surrounding the December 2, 2022 'termination' of your client, Ricky Morrison."

  b.  "My investigation revealed that the decision to terminate Mr. Morrison was made by the county administrator, not the Board of Commissioners…"

  c.  "…the county administrator's action was not politically motivated."

  d.  "…Mr. Morrison's 'termination' was initiated by the county administrator and no Board action was taken…"

  e.  "The Commissioners will not ratify the action taken by the county administrator." (They directed the actions.)

141.    Defendant DeGenova knew that an investigation was in progress and that an official proceeding was about to be or likely to be instituted, given the content of the demand letter she received from Morrison's counsel demanding preservation of evidence and threatening such action.

142.    Defendant DeGenova made, presented, or used this email, knowing it to be false and with purpose to corrupt the outcome of any such proceeding or investigation.

143.    Defendant DeGenova even took the additional actions of providing the email to Morrison's counsel and to the media for publication.

144.    As a direct and proximate result of these actions, Morrison has suffered and will continue to suffer economic and non-economic damages for which DeGenova is liable, including, but not

limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

145.    Defendants DeGenova's acts were malicious, in bad faith, willful, egregious, and worthy of substantial sanction to punish and deter her and others from engaging in this type of unlawful conduct.

## CLAIM 5
### CIVIL LIABILITY FOR CRIMINAL ACTS (TELECOMMUNICATIONS FRAUD) UNDER OHIO REV. CODE §§ 2307.60 AND 2913.05(A) BY PLAINTIFF RICKY MORRISON AGAINST DEFENDANT GINA DEGENOVA IN HER PERSONAL CAPACITY

146.    Plaintiff incorporates all previous allegations.

147.    Under Ohio Rev. Code § 2913.05(A), no person, having devised a scheme to defraud, shall knowingly disseminate, transmit, or cause to be disseminated or transmitted by means of a wire, radio, satellite, telecommunication, telecommunications device, telecommunications service, or voice over internet protocol service any writing, data, sign, signal, picture, sound, or image with purpose to execute or otherwise further the scheme to defraud.

148.    Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action. Violations of Ohio Rev. Code § 2913.05(A) are criminal acts, indeed felonious under § 2913.05(E).

149.    Defendant DeGenova's December 13, 2022 email contained materially false and fraudulent writings. Such statements included, but are not limited to:

    a.    "…I conducted an investigation into the circumstances surrounding the December 2, 2022 'termination' of your client, Ricky Morrison."

    b.    "My investigation revealed that the decision to terminate Mr. Morrison was made by the county administrator, not the Board of Commissioners…"

    c.    "…the county administrator's action was not politically motivated."

    d.   "…Mr. Morrison's 'termination' was initiated by the county administrator and no Board action was taken…"

    e.   "The Commissioners will not ratify the action taken by the county administrator." (They directed the actions.)

150.    Defendant DeGenova, having devised this scheme to defraud, knowingly disseminated, transmitted, or caused to be transmitted or disseminated by means of a wire, radio, satellite, telecommunication, telecommunications device, telecommunications service, and voice over internet protocol service writings, data, signals, pictures, sounds, and images with purpose to execute and otherwise further her scheme to defraud.

151.    Defendant DeGenova knowingly disseminated or transmitted her December 13, 2022 email, or caused it to be disseminated or transmitted, to Morrison's counsel and the news media by means of a wire, telecommunication, telecommunications device, or telecommunications service.

152.    Defendant DeGenova did so with purpose to execute and further the scheme to defraud, specifically, to defraud Morrison by falsely publicly exonerating Rimedio-Righetti and Ditzler's unlawful and retaliatory termination of Morrison, to defraud party officials of her own culpability in covering the retaliatory firing for her political benefit from the Commissioners, and to deprive the public of honest services.

153.    As a direct and proximate result of these actions, Morrison has suffered and will continue to suffer economic and non-economic damages for which DeGenova is liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

154.    Defendant DeGenova's acts were malicious, in bad faith, willful, egregious, and worthy of substantial sanction to punish and deter her and others from engaging in this type of unlawful conduct.

CLAIM 6
CIVIL LIABILITY FOR CRIMINAL ACTS (BRIBERY) UNDER OHIO REV. CODE § 2307.60
(INCORPORATING R.C. 2921.02(A) AND (B)) BY PLAINTIFF RICKY MORRISON AGAINST
DEFENDANTS GINA DEGENOVA, CAROL RIMEDIO-RIGHETTI, AND DAVID DITZLER IN
THEIR PERSONAL CAPACITIES

155.    Plaintiff incorporates all previous allegations.

156.    Under Ohio Rev. Code § 2921.02(A), "No person, with purpose to corrupt a public servant
or party official, or improperly to influence a public servant or party official with respect to the
discharge of the public servant's or party official's duty, whether before or after the public servant or
party official is elected, appointed, qualified, employed, summoned, or sworn, shall promise, offer,
or give any valuable thing or valuable benefit."

157.    Under Ohio Rev. Code § 2921.02(B), "No person, either before or after the person is
elected, appointed, qualified, employed, summoned, or sworn as a public servant or party official,
shall knowingly solicit or accept for self or another person any valuable thing or valuable benefit to
corrupt or improperly influence the person or another public servant or party official with respect to
the discharge of the person's or the other public servant's or party official's duty."

158.    Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act
may recover full damages in a civil action. Violations of Ohio Rev. Code § 2921.02(A) and (B) are
criminal acts, indeed felonies, under § 2921.03(H).

159.    Defendant DeGenova's false and fraudulent statements contained in her December 13,
2022, email were disseminated with purpose to corrupt and improperly influence Defendants
Rimedio-Righetti and Ditzler by promising, offering, and giving them a valuable thing or benefit,
namely covering up their personal exposure to public opprobrium, civil liability, and punitive
damages resulting from their retaliation against Morrison, in consideration for their past and
expected continued support for her appointment as prosecutor. These acts were also intended to

influence party officials beyond those two Commissioners, who would vote on her permanent appointment as prosecuting attorney on January 7, 2023.

160.    Such false and fraudulent statements included, but are not limited to:

    a.    "…I conducted an investigation into the circumstances surrounding the December 2, 2022 'termination' of your client, Ricky Morrison."

    b.    "My investigation revealed that the decision to terminate Mr. Morrison was made by the county administrator, not the Board of Commissioners…"

    c.    "…the county administrator's action was not politically motivated."

    d.    "…Mr. Morrison's 'termination' was initiated by the county administrator and no Board action was taken…"

    e.    "The Commissioners will not ratify the action taken by the county administrator." (They directed the actions.)

161.    Likewise, Defendants Rimedio-Righetti and Ditzler with purpose to corrupt and improperly to influence Defendant DeGenova regarding her duties to be truthful in service to the County and public (*see*, *e.g.*, statutes implicated in this Complaint and Ohio Prof. Cond. R. 4.1 (lawyer's, including public lawyer's, duty to be truthful to third parties[17])) and party officials voting on January 7, 2023, promised, offered, and gave DeGenova a valuable thing or benefit, namely their continued political support as the highest-ranking elected officials in Mahoning County, and solicited and accepted for

---

[17] Prof. Cond. R. 4.1 provides:

In the course of representing a client a lawyer shall not knowingly do either of the following:

    (a)    make a false statement of material fact or law to a third person;
    (b)    fail to disclose a material fact when disclosure is necessary to avoid assisting an *illegal* or *fraudulent* act by a client.

(Emphasis in original.)

themselves the valuable thing and benefit of DeGenova's false exoneration to corrupt or improperly influence DeGenova's discharge of her duty.

162.    Defendants did these acts with malicious purpose, in bad faith, and in a wanton and reckless manner

163.    As a direct and proximate result of these actions, Morrison has suffered and will continue to suffer economic and non-economic damages for which the named Defendants are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

164.    Defendants DeGenova, Rimedio-Righetti, and Ditzler's acts were malicious, in bad faith, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 7
### CIVIL LIABILTY FOR CRIMINAL ACTS (INTERFERING WITH CIVIL AND STATUTORY RIGHTS) UNDER OHIO REV. CODE §§ 2307.60 AND 2921.45 BY PLAINTIFF RICKY MORRISON AGAINST DEFENDANTS CAROL RIMEDIO-RIGHETTI, DAVID DITZLER, AUDREY TILLIS, AND GINA DEGENOVA IN THEIR PERSONAL CAPACITIES

165.    Plaintiff incorporates all previous allegations.

166.    Under Ohio Rev. Code § 2921.45, no public servant, under color of the public servant's office, employment, or authority, shall knowingly deprive, or conspire or attempt to deprive any person of a constitutional or statutory right. This provision carries a criminal penalty.

167.    Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action.

168.    Defendants Rimedio-Righetti, Ditzler, Tillis, and DeGenova are public servants. Under color of their office, employment, or authority, each knowingly deprived, conspired to deprive, or attempted to deprive Morrison of his constitutional and statutory rights as detailed above, including

his right to exercise his constitutional right to freedom of assembly, freedom of association, freedom to petition his government, and freedom of speech.

169.    As a direct and proximate result of these actions, Morrison has suffered and will continue to suffer economic and non-economic damages for which the named Defendants are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

170.    Defendants Rimedio-Righetti, Ditzler, Tillis, and DeGenova's acts were malicious, in bad faith, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 8
### CIVIL LIABILTY FOR CRIMINAL ACTS (FAILURE TO REPORT A CRIME) UNDER OHIO REV. CODE §§ 2307.60 AND 2921.22(A) BY PLAINTIFF RICKY MORRISON AGAINST DEFENDANTS CAROL RIMEDIO-RIGHETTI, DAVID DITZLER, AND ANTHONY TRAFICANTI IN THEIR PERSONAL CAPACITIES

171.    Plaintiff incorporates all previous allegations.

172.    Under Ohio Rev. Code § 2921.22(A)(1), no person, knowing that a felony has been or is being committed, shall knowingly fail to report such information to law enforcement. This provision carries a criminal penalty.

173.    Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action.

174.    Defendant Gina DeGenova's above-mentioned activities constitute Intimidation (False and Fraudulent Writing) in violation of Ohio Rev. Code § 2921.03(A), Tampering with Records in violation of Ohio Rev. Code § 2913.42(A)(1) and (2), Tampering with Evidence in violation of Ohio Rev. Code § 2921.12(A)(2), Telecommunications Fraud in violation of Ohio Rev. Code § 2913.05(A), and Bribery in violation of Ohio Rev. Code § 2921.02(A) and (B). Each of these violations constitute felonies.

175.     Defendants Carol Rimedio-Righetti, David Ditzler and Anthony Traficanti knew DeGenova engaged in this activity and knowingly failed to report the information to law enforcement.

176.     Not only did Defendants Rimedio-Righetti, Ditzler, and Traficanti fail to report these felonious crimes in violations Ohio Rev. Code § 2921.22(A)(1), but they violated their duty to this community and the people they are supposed to be serving. Their actions and failures further highlight the on-going cover-up of their earlier violations.

177.     As a direct and proximate result of these actions, Morrison has suffered and will continue to suffer economic and non-economic damages for which the named Defendants are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

178.     Defendants Rimedio-Righetti, Ditzler, and Traficanti's acts were malicious, in bad faith, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 9
### VIOLATION OF OHIO'S OPEN MEETINGS ACT (OHIO REV. CODE § 121.22(G) AND (H), *ET SEQ.* BY PLAINTIFF RICKY MORRISON AGAINST DEFENDANT MAHONING COUNTY THROUGH ITS BOARD OF COMMISSIONERS

179.     Plaintiff incorporates all previous allegations.

180.     The Mahoning County Board of Commissioners is a "public body" subject to Ohio's Open Meetings Act, Ohio Rev. Code § 121.22(B)(1)(a).

181.     The Open Meeting Act requires public bodies in Ohio to take official action, deliberate on official business, and otherwise conduct the public's business only in open meetings where the public may attend and observe unless specifically authorized by law.

182.     The Open Meetings Act is designed to prevent public officials from meeting secretly to deliberate on public issues without accountability to the public.

183.     The Open Meetings Act is to be read broadly in favor of openness.

184.    Public bodies must provide advance notice to the public indicating when and where each meeting will take place.

185.     The public body must take full and accurate minutes of all meetings and make these minutes available to the public, except in the case of permissible executive sessions.

186.    No vote or other decision-making on a matter discussed may take place during an executive session.

187.    A "meeting" is any prearranged gathering of a public body by a majority of its members to discuss public business. Ohio Rev. Code § 121.22(B)(2).

188.    A public body may go into executive session only on bases enumerated in Ohio Rev. Code § 121.22(G). Failure to comply with the notice and executive-session mandates of the Open Meetings Act and to take actions only by formal resolution in a public meeting violates the Open Meetings Act. Ohio Rev. Code § 121.22(H).

189.    On November 17, 2022, Defendants Carol Rimedio-Righetti, David Ditzler, and Anthony Traficanti met in secret with then-Prosecuting Attorney Paul Gains and Gina DeGenova, without public notice. There, according to Traficanti, Gains threatened the Commissioners who thereafter decided to back DeGenova's appointment as acting prosecutor. None of the requirements for a public meeting or executive session were met.

190.    On December 1, 2022, Defendants Carol Rimedio-Righetti, David Ditzler, and Anthony Traficanti met in secret to discuss the termination of Ricky Morrison. Defendants Rimedio-Righetti and Ditzler voted to terminate Morrison, while Traficanti voted against it.

191.    Although Defendant Traficanti described this December 1 meeting to Morrison as an "executive session," none of the requirements for an executive session were met. There was no notice and no proper purpose.

192.    Defendants had training on these issues and knew that (although their ignorance would be no excuse).

193.    During the December 1, 2022 Board of Commissioners meeting, none of the Commissioners voted to go into executive session. Additionally, following the secret meeting, the Commissioners did not return to the public meeting and did not vote publicly on Morrison's termination.

194.    Instead, Defendants Rimedio-Righetti, Ditzler, and Traficanti operated in secret—out of the watchful eye of the public and media.

195.    Defendants Rimedio-Righetti and Ditzler operated covertly to maximize the intimidation and retaliatory messages they wanted to send: "If you support our opponents and don't support us, we will ruin you." Defendants Rimedio-Righetti and Ditzler also operated covertly to preserve their plausibly deniability.

196.    Defendants Rimedio-Righetti and Ditzler's punished Morrison for crossing the powers-that-be.

197.    Ohio Rev. Code § 121.22(I)(1) allows any individual to file suit in common pleas court to enforce the Open Meetings Act. Here, this federal Court has supplemental jurisdiction over this claim because it is "so related to claims in the action within" this Court's "original jurisdiction that [it] form[s] part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367.

198.    Plaintiff Morrison is entitled to injunctive relief and statutory civil-forfeiture damages for the Board of Commissioners's multiple Open Meetings Act violations.

## CLAIM 10
### CIVIL LIABILITY FOR CRIMINAL ACTS (DERELICTION OF DUTY) UNDER OHIO REV. CODE § 2307.60 (INCORPORATING R.C. 2921.44(E) BY PLAINTIFF RICKY MORRISON AGAINST DEFENDANTS GINA DEGENOVA, CAROL RIMEDIO-RIGHETTI, AND DAVID DITZLER IN THEIR PERSONAL CAPACITIES

199.    Plaintiff incorporates all previous allegations.

200.    Under Ohio Rev. Code § 2921.44(E), "No public servant shall recklessly fail to perform a duty expressly imposed by law with respect to the public servant's office, or recklessly do any act expressly forbidden by law with respect to the public servant's office."

201.    Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action. Violations of Ohio Rev. Code § 2921.44(E) are criminal acts under § 2921.44(F).

202.    Defendants DeGenovo, Rimedio-Righetti, and Dizler's conduct, as detailed above throughout this Complaint and in the claims above, violated § 2921.44(E). They recklessly failed to perform duties expressly imposed by law with respect to their office, and recklessly did acts expressly forbidden by law with respect to their office. These included, but were not limited to intimidation, tampering with records, tampering with evidence, telecommunications fraud, bribery, interference with civil and statutory rights, the failure to report crimes by others, failure to report crimes, and, the case of the Commissioners, violations of the Open Meetings Act, and engaging in unconstitutional retaliatory acts.

203.    As a direct and proximate result of Defendants' conduct, Morrison has suffered and will continue to suffer damages for which the named Defendants are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

204.    Defendants DeGenova, Rimedio-Righetti, and Ditzler's acts were malicious, in bad faith, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

**CLAIM 11**
**(ALTERNATIVE CLAIM)**
**FOURTEENTH AMENDMENT VIOLATION UNDER 42 U.S.C. § 1983 FOR FAILURE TO TRAIN AND SUPERVISE EMPLOYEES RESULTING IN A WRONGFUL DISCHARGE BY PLAINTIFF RICKY MORRISON AGAINST DEFENDANTS MAHONING COUNTY, CAROL RIMEDIO-RIGHETTI, DAVID DITZLER, ANTHONY TRAFICANTI, AND AUDREY TILLIS IN THEIR OFFICIAL AND PERSONAL CAPACITIES**

205.    Plaintiff incorporates all previous allegations.

206.    Defendant Anthony Traficanti previously stated that Defendants Carol Rimedio-Righetti and David Ditzler voted against him in deciding to terminate Morrison. Traficanti also previously stated that Morrison's termination was in retaliation for Morrison's attendance at the Board of Elections meeting, association/support of DiFabio, and their election-related discussions.

207.    In direct conflict with Defendant Traficanti, Defendants Rimedio-Righetti and Ditzler shifted the blame for Morrison's termination to the county administrator, Defendant Audrey Tillis. And, in further conflict with Traficanti, Rimedio-Righetti and Ditzler claimed the termination was not retaliatory or politically motivated.

208.    Defendants Rimedio-Righetti and Ditzler's claims against Defendant Tillis were further advanced by Defendant Gina DeGenova's purported "investigation," in which DeGenova insinuates that Tillis lacked the authority to terminate Morrison and that the Board did not authorize it.

209.    Defendant Tillis has not made any public comment on the matter.

210.    Defendants Rimedio-Righetti, Ditzler, and DeGenova's position does not comport with the Commissioners own Resolution No. 20-03-029, from March 26, 2020, which grants the county

administrator (Tillis) the ability and authority to hire and fire county employees. This Resolution has never been rescinded.

211.    Despite Defendants Rimedio-Righetti, Ditzler, and DeGenova's flawed and faulty excuses, they continue to shift the blame to Defendant Tillis.

212.    If the factfinder were to believe Defendants Rimedio-Righetti, Ditzler, and DeGenova's claims, then Rimedio-Righetti, Ditzler, and Traficanti would still be liable for failure to train and supervise Defendant Tillis.

213.    As a result, Defendants Rimedio-Righetti, Ditzler, and DeGenova have dragged Traficanti into the fray and opened him up to liability as well.

214.    By Defendant Ditzler's own admission to *The Vindicator*, he claimed to have known Defendant Tillis terminated Morrison when it occurred. Yet, neither Defendant Rimedio-Righetti, Ditzler, nor Traficanti took any action to correct Tillis's purported wrongful discharge.

215.    Defendants Rimedio-Righetti, Ditzler, Traficanti, and Tillis displayed a deliberate indifference to the actions leading up and causing Morrison's termination, failed to exercise due care, and acted in a reckless manner by failing to take any actions after the termination.

216.    If Defendant Tillis did not have the authority to terminate Morrison, then Defendants Rimedio-Righetti, Ditzler, and Traficanti failed to properly trained and supervised her to prevent her from engaging in such unlawful, retaliatory, and prohibited acts. And Defendants Rimedio-Righetti, Ditzler, and Traficanti should have taken additional actions to prevent such behavior from occurring in the future. Instead, they did nothing.

217.    Similarly, if Defendant Tillis instructed/ordered another Mahoning County employee to carry out Morrison's termination, Tillis would be liable for her failure to properly train and supervise that employee.

218.    Defendants Rimedio-Righetti, Ditzler, Traficanti and Tillis engaging in the above-mentioned adverse actions while acting under color of state law.

219.    Defendants Rimedio-Righetti, Ditzler, Traficanti, and Tillis were at all relevant times sufficiently empowered Mahoning County officials that their acts constitute the customs, policies, and practices of Mahoning County.

220.    As a direct and proximate result of these actions, Morrison has suffered and will continue to suffer economic and non-economic damages for which the named Defendants are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

221.    Defendants Mahoning County, Rimedio-Righetti, Ditzler, Traficanti, and Tillis's acts were malicious, in bad faith, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### PRAYER FOR RELIEF

For the reasons stated above, Plaintiff respectfully requests the following relief from the Court:

A.    Declare that Defendants' acts and conduct constitute violations of federal and state law and the United States Constitution;

B.    Enjoin Defendants from further retaliating against Morrison and from further implementing any previous acts of retaliation;

C.    Enter judgment in Morrison's favor on all claims for relief;

D.    Award Morrison full compensatory damages, economic and non-economic, including, but not limited to, damages for back pay, front pay, pain and suffering, mental anguish, emotional distress, humiliation, and inconvenience that he has suffered and is reasonably certain to suffer in the future;

E.    Declare that Defendant's acts taken while it was in violation of the Open Meetings Act are invalid;

F.    Enjoin Defendant from further violations of the Open Meetings Act;

G.    Award Morrison a $500 civil-forfeiture penalty for each violation of the Open Meetings Act;

H.     Award Morrison punitive damages as appropriate for all intentional and malicious violations of federal and state law and constitutional rights;

I.     Award pre-judgment and post-judgment interest at the highest lawful rate;

J.     Award Morrison his reasonable attorney fees, expert fees, and all other costs and expenses of this suit;

K.     Award all other relief in law or equity to which Morrison is entitled and that the Court deems equitable just, or proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues within this complaint.

Dated: December 23, 2022                                  Respectfully submitted,

/s/ Subodh Chandra                                       Per consent
Subodh Chandra (0069233)                                 Martin P. Desmond (0077377)
Donald P. Screen (0044070)                               Attorney at law
Melissa S. Obodzinski (0102556)                          P.O. Box 14052
THE CHANDRA LAW FIRM LLC                                 Youngstown, OH 44514
The Chandra Law Building                                 330.559.4505 (p)
1265 West 6th Street, Suite 400                          Mpmd4@hotmail.com
Cleveland, Ohio 44113
216.578.1700 (p) / 216.578.1800 (f)                      Attorneys for Plaintiff Ricky Morrison
Subodh.Chandra@ChandraLaw.com
Donald.Screen@ChandraLaw.com
Melissa.Obodzinski@ChandraLaw.com