IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Ricky Morrison**<br><br>        Plaintiff,<br><br>   v.<br><br>**Mahoning County, *et al.***<br><br>        Defendants. | Case No. 4:22-cv-02314<br><br>Judge Benita Y. Pearson<br><br>Magistrate Judge Carmen E. Henderson |

| |
|---|
| **PLAINTIFF RICKY MORRISON'S OPPOSITION TO DEFENDANT DEGENOVA'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

Plaintiff Ricky Morrison respectfully opposes Defendant Gina DeGenova's motion for

judgment on the pleadings because (1) Defendant DeGenova is not entitled to judgment as a matter

of law; and (2) genuine issues of material fact exist. A memorandum in support follows.

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iv

MEMORANDUM IN SUPPORT ..........................................................................................1

I.  Factual and procedural background.  ..........................................................................1

    A.  The Court may take judicial notice of and consider public records Morrison submits as part of his response................................................................................2

    B.  DeGenova's email is not a Fed. R. Evid. 408 compromise offer. ...........................4

    C.  DeGenova's December 13, 2022 email did not contain her legal opinion, but contained factual (though false) allegations.  ........................................................5

II.  Law and Argument. ...................................................................................................7

    A.  In deciding a motion for judgment on the pleadings, the Court must accept all factual allegations in the complaint as true.............................................................7

    B.  Defendant DeGenova's December 13, 2022 email is not protected by the litigation privilege and she cannot be shielded by absolute immunity. ................................7

        1.  DeGenova's December 13, 2022 email was not created during the course of any judicial proceeding; rather, it contained "extrajudicial statements" that fail to meet the legal criteria for litigation privilege and absolute immunity.  ..........................................................................................7

        2.  Even if DeGenova's email were made during or as part of a judicial proceedings, litigation privilege does not cloak DeGenova with absolute immunity for making false and fraudulent statements in violation of the professional-conduct rules.  .........................................................................9

        3.  Even if DeGenova's email were made during or as part of a judicial proceeding, the litigation privilege does not cloak DeGenova with absolute immunity for her "act" of disseminating her false and fraudulent statements to the media.  ......................................................................... 10

        4.  Morrison alleges that DeGenova published her December 13, 2022 email to the media to cover up for other Defendants, gaslight Morrison and deter him from exercising his rights, and falsify government records others would rely on—genuine issues of material fact exist about that. ... 10

        5.  Genuine issues of material fact exist as to *what* Defendant DeGenova disseminated in her December 13, 2022 email to the media.  ................... 12

6.  DeGenova's December 13, 2022 email contained false and fraudulent statements. ....................................................................... 14

C.  Judgment on the pleadings is not warranted because DeGenova failed to satisfy the requirements for qualified litigation immunity. ............................................. 14

D.  Judgment on the pleadings is not warranted because DeGenova violated Morrison's constitutional rights and took adverse actions against him. ............. 15

E.  The Court should deny judgment on the pleadings because DeGenova's statements to the media following the lawsuit's filing were defamatory. ............. 19

1.  The defamation claim is based on DeGenova's false statements published after the filing of the lawsuit, not on her false and fraudulent statements contained in her December 13, 2022 email. ................................................ 19

2.  DeGenova baselessly tries to lump all claims into one category and incorrectly cloak them in immunity. ........................................................... 20

III.  Conclusion. ........................................................................................................ 20

TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366¶ 90 (2012) ............................................................... 9

*Barany–Snyder v. Weiner*, 539 F.3d 327 (6th Cir. 2008) ................................................................................. 2

*Buddenberg v. Weisdack,* 939 F.3d 732 (6th Cir. 2019)................................................................................. 16

*Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807 (6th Cir. 2007)................................... 16

*Ellison v. Garbarino*, 48 F.3d 192 (6th Cir. 1995) ........................................................................................ 15

*Escue v. Sequent, Inc.*, 2010 WL 3365933 (S.D. Ohio 2010) ......................................................................8, 9

*Farhat v. Jopke*, 370 F.3d 580 (6th Cir.2004) ............................................................................................... 16

*Hahn v. Kotten*, Ohio St.2d 237, 244 (1975). .............................................................................................. 14

*Hensley v. Wester Chester Twp.*, 2022 WL 4621432 (S.D. Ohio 2022) .......................................................8, 9

*JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577 (6th Cir. 2007)............................................................ 7

*Laster v. City of Kalamazoo*, 746 F.3d 714 (6th Cir. 2014) ........................................................................... 16

*Mauk v. Brundage*, 68 Ohio St. 89 (1903)...................................................................................................... 8

*Michaels v. Berliner*, 119 Ohio App.3d 82 (9th Dist. 1997) .......................................................................8, 9

*Michaels v. Berliner*, 2001 WL 111582 (9th Dist. 2001) ................................................................................ 7

*Morrison v. Gugle*, 142 Ohio App.3d 244 (10th Dist. 2001) ................................................................8, 9, 14

*Reister v. Gardner*, 164 Ohio St.3d 546¶ 8 (2020)....................................................................................7, 10

*Rutan v. Republican Party of Ill.*, 868 F.2d 943 (7th Cir. 1989) .................................................................... 16

*Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250 (6th Cir. 2006) ...................................................... 16

*Scott v. News-Herald*, 25 Ohio St.3d 243 (1986) ........................................................................................... 6

*Shibe v. Yaskawa Am., Inc.*, 2020 WL 3511588 (W.D. Ky 2020) ................................................................... 11

*Surace v. Wuliger*, 25 Ohio St.3d 229 (1986) ................................................................................................. 8

*Tahfs v. Proctor*, 316 F.3d 584 (6th Cir. 2003)............................................................................................. 15

*Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) ................................................................................... 16

*Theiss v. Scherer*, 396 F.2d 646 (6th Cir. 1968)............................................................................................. 8

*Whittiker v. Deutsche Bank Nat. Tr. Co.*, 605 F.Supp.2d 914 (N.D. Ohio 2009)............................................. 2

*Willitzer v. McCloud*, 6 Ohio St.3d 447 (1983) ........................................................................................... 10

**Statutes**

42 U.S.C. § 1983............................................................................................................................................ 15

Ohio Rev. Code § 149.43(A)(1)(g) ................................................................................................................. 11

Ohio Rev. Code § 149.43(A)(1)(g) and (A)(4)................................................................................................. 13

Ohio Rev. Code § 149.43(A)(4)....................................................................................................................... 11

**Rules**

Fed. R. Civ. P. 15 .......................................................................................................................................... 19

Fed. R. Evid. 408 ............................................................................................................................................ 4

Ohio Evid. R. 408............................................................................................................................................ 4

**Other Authorities**

5C Fed. Prac. & Proc. Civ. § 1368 (3d ed.)..................................................................................................... 11

iv

## MEMORANDUM IN SUPPORT

### I.  Factual and procedural background

The First Amended and Supplemental Complaint, incorporated, establishes the facts for the Court to consider for this motion. Plaintiff provides the following summary timeline of events:

- 9/12/2022: Plaintiff hired by Mahoning County. (Am. Compl., Doc. 3, PageID#67.)

- 11/28/2022: Plaintiff, as a private citizen, attends an elections-board meeting and spoke with Gino DiFabio—Defendant Commissioner Carol Rimedio-Righetti's challenger. Plaintiff congratulated Rimedio-Righetti, who expressed displeasure. (*Id.*, PageID#67–68.)

- 12/1/2022: Defendants Rimedio-Righetti, Anthony Traficanti, and David Ditzler meet in violation of Ohio's Open Meeting Act during which Rimedio-Righetti and Ditzler voted to terminate Plaintiff in retaliation—over Traficanti's objection. (*Id.*, PageID#71.)

- 12/2/2022: Defendants terminate Plaintiff. (*Id.*, PageID#69.)

- 12/2/2022: Gino DiFabio speaks to Defendant Traficanti, who confirmed Plaintiff was fired for sitting with and talking to DiFabio at the public hearing. (*Id.*, PageID#70.)

- 12/3/2022: Defendant Traficanti calls Plaintiff and confirms that Defendants Rimedio-Righetti and Ditzler voted to terminate him because of his attendance at the board of elections hearing and sitting with and talking to DiFabio. (*Id.*, PageID#70.)

- 12/9/2022: Plaintiff's counsel emailed a letter to Defendants Rimedio-Righetti, Ditzler, and Traficanti demanding Plaintiff's immediate reinstatement. (*Id.*, PageID#72.)

- 12/11/2022: Plaintiff's counsel emailed Defendant Gina DeGenova. (PageID#74.)

- 12/12/2022: Defendant DeGenova informed Plaintiff's counsel that she was "looking into" the matter; she then met with Defendant Traficanti. "According to Traficanti, 'I told [DeGenova] everything. She knew.' That is, Traficanti told DeGenova about the commissioners' secret meeting at which Rimedio-Righetti and Ditzler—over Traficanti's opposition—voted to fire Morrison in retaliation for Morrison's attendance at the Board of Elections meeting, his support of and association with DiFabio, and his election-related discussions with DiFabio." (*Id.*, PageID#74–75.)

- 12/13/2022: DeGenova sent Plaintiff's counsel an email reinstating Plaintiff, which contained false and fraudulent statements that conflicted with Traficanti's statement to her. DeGenova published her email to the media. (*Id.*, PageID#75–77.)

- 12/15/2022: Plaintiff spoke to Defendant Traficanti, who stated, "the truth will definitely come out," "the truth will come out," "the truth is going to come out," and other

incriminating remarks. (*Id.*, PageID#78–81.)

- 12/17/2022: Defendant Traficanti informed Gino DiFabio "the truth will come out" and thanked him for bringing attention to Plaintiff's unlawful termination. (*Id.*, PageID#81–82).

- 12/20/2022: *The Vindicator* published a statement from Defendant Ditzler that contradicted DeGenova's December 13, 2022 email. (*Id.*, PageID#82–83.)

- Week of 12/19/2022: Defendant Traficanti stated to several individuals that he knew what Defendants were doing and did not want to be a part of it. (*Id.*, PageID#83).

- 12/23/2022: Plaintiff filed his original Complaint. (Compl., Doc. 1).

- 12/28/2022: The media reported that Traficanti confirmed his opposition to Plaintiff's termination. They also reported Defendant Rimedio-Righetti, Ditzler, and DeGenova's false and defamatory statements against Plaintiff. (Am. Compl., Doc. 3, PageID#83–85.)

- 12/30/2022: Plaintiff filed his Amended Complaint adding Claim 11 (defamation). (Doc. 3.)

**A. The Court may take judicial notice of and consider public records Morrison submits as part of his response.**

"In ruling on a motion to dismiss or motion for judgment on the pleadings, the Court may only consider documents attached to, incorporated by, or referred to in the pleadings." *Whittiker v. Deutsche Bank Nat. Tr. Co.*, 605 F.Supp.2d 914, 924 (N.D. Ohio 2009). Generally, when matters outside the pleadings are considered as part of a Rule 12(b)(6) or Rule 12(c) motion, Rule 12(d) provides that the motion must be treated as one for summary judgment under Rule 56. *Id.*

But the Court may also take judicial notice and consider **public records** without converting a Rule 12(b)(6) or Rule 12(c) motion to a Rule 56 motion. *Id.* at 925 (citations omitted); *see also Barany–Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (other citations omitted).

DeGenova insists she was "obligated" to disseminate her December 13, 2023 email to the media in response to "prior" public-records requests. (Def.'s Mot., Doc. 18, PageID#287.) That's false as is her fraudulent citation to Amended Complaint PageID#96 to support it. Plaintiff asks the Court to take judicial notice of the following public records because they refute DeGenova's false representation to the Court that she was "obligated" to publish her email to the media because of a

prior public-records request. These records show no such requests existed when DeGenova

published her December 13, 2022 email; rather, she did so on her volition and for no legitimate

reason as alleged. (Am. Compl., Doc. 3, PageID#76–77.)

On December 15, 2022, Plaintiff's counsel served a public-records request upon Defendants

Rimedio-Righetti, Traficanti, Ditzler, and Tillis.[1] Request No. 5 sought:

> Records regarding any communications from, between, to, or among county personnel other
> than the County Commissioners (or to or from any third parties, including media)—
> including, but not limited to, Audrey Tillis and Allen Landfried—about Ricky Morrison in
> November and December 2022, whether or not Mr. Morrison is mentioned by name. As a
> matter of law, this includes any such communications contained on private devices or using
> private communications media including text messages and social-media services.

On January 18, 2023, counsel for Defendants Rimedio-Righetti, Traficanti, and Ditzler, responded

to Request No. 5.[2] The records provided contained *no purported public-records request from media*; nor did

the response contain DeGenova's purported response to the media.[3]

On December 22, 2022, Plaintiff's counsel served an even more pointed public-records

request directly to Defendant DeGenova.[4] Request No. 1 stated:

> All communications (not to include those to Mahoning County employees, representatives
> of the law firm of Mazanec, Raskin, and Ryder; or to CORSA), sent by email, text, fax,
> social-media service or any other medium dated December 9, 2022) or later regarding the
> topic of Ricky Morrison, whether he is mentioned by name or not. This would include, but
> not be limited to, any communications to any news media or Democratic Party officials,
> offering quotes, asserting facts, or offering conclusions about the purported termination of
> Ricky Morrison. All such communications should not be subject to purported claims of
> privilege because they are to third parties outside of the county government.

On February 28, 2023, DeGenova's legal representatives responded to Request No. 1.[5] The

records contained no media public-records requests *before* DeGenova published her email to the

---

[1] Chandra Law Firm public-records request (12/15/2022), attached as Ex. 1.
[2] Attorney McLandrich letter to Plaintiff's counsel (1/18/2023), attached as Ex. 2.
[3] Defendants' response to PPR (12/15/2022) Request No. 5, attached as Ex. 3.
[4] Chandra Law Firm public-records request (12/22/2022), attached as Ex. 4.
[5] Kim Hopkins letter to Plaintiff's counsel (Feb. 28, 2023), attached as Ex. 5.

them on December 13, 2022; nor did DeGenova produce her purported response to the media.[6]

But DeGenova's production contained a public-records request from David Skolnick of *The Vindicator* dated *December 22, 2022—nine days after Defendant DeGenova already published her email to the media.* DeGenova provided these public-records productions on February 28—*over two weeks after* her counsel sent a letter to Plaintiff's counsel demanding dismissal and on the same day Plaintiff's counsel responded to that letter. DeGenova's counsel's letter did not claim that she disseminated the email in response to a public-records request. Any attempts, now, to produce any such records should be viewed skeptically. It would also convert her motion for judgment on the pleadings into a summary-judgment motion, which should permit Plaintiff to complete discovery.

These public records show that no such media public-records requests existed when Defendant DeGenova disseminated her December 13, 2022 email to the media on that same date. The claims she made to this Court in her motion are false—just like the statements in her email. Even if they did, it's factually, and as explained below, legally incorrect that she would be obligated to produce documents in response to a *pre-existing* public-records request.

### B. DeGenova's email is not a Fed. R. Evid. 408 compromise offer.

Defendant DeGenova claims her December 13, 2022 email was sent Plaintiff's counsel "with the intention that her email response was 'Subject to Evidence Rule 408.'" (Defendant's Motion, Doc. 18, PageID#279–280.) Both Fed. R. Evid. 408 and Ohio Evid. R. 408 provide limited protections for negotiations, offers of consideration, and attempts to compromise. But, here, no negotiations, offers of consideration, or attempts to compromise were made by either party.

Plaintiff's counsel's December 9, 2022 letter to Defendants Rimedio-Righetti, Ditzler, and Traficanti "demand[ed] Morrison's immediate and *unconditional* reinstatement from his unlawful termination in retaliation for exercising his First Amendment rights." Amended Compl., Doc. 3,

---

[6] Def. DeGenova's public-records-request response (Dec. 22, 2022) Request No. 1, attached as Ex. 6.

PageID#72 (emphasis added). No attempts to negotiate, offer, or compromise were made, as evident from the word "unconditional."

Plaintiff's counsel's December 11, 2022 to Defendant DeGenova "… demand[ed] Morrison's *unconditional* reinstatement to his job, to mitigate the irreparable harm he was suffering from being deprived of health insurance while afflicted with cancer." (Amended Compl., Doc. 3, PageID#74) (emphasis added). No attempts to negotiate, offer, or compromise were made.

DeGenova's December 13, 2022 email made no attempts to negotiate, offer, or compromise; she simply announced Plaintiff was being reinstated, combined with other self-serving, unnecessary false factual allegations. (Am. Compl., Doc. 3, PageID#75.) DeGenova's unilateral branding was merely an ineffectual attempt to insulate her false and fraudulent writings and acts from being used against her. Also, DeGenova provided her December 13, 2022 email to the media for no legitimate reason, which further bars any Evid.R. 408 claims. (*Id.*, PageID#76–77).

### C. DeGenova's December 13, 2022 email did not contain her legal opinion, but contained factual (though false) allegations.

Contrary to DeGenova's efforts to rewrite the operative complaint, Claim 11 (defamation) is **not** based on her December 13, 2022 email. It's based on her statements to the media *after* the filing of the lawsuit, as further explained below in Section II. E. of this opposition.

As to DeGenova's claim that her December 13, 2022 email stated her "legal opinion," that is untrue because Traficanti previously told her the facts were contrary to what she asserted—and she couldn't possibly have conjured such an "opinion." The claims related to the email—1 (First Amendment retaliation) and 2–10 (civil liability for criminal acts)—require the statements to have been "knowingly" made. Whether the statements are false facts or knowingly false "opinion" is irrelevant, and the law does not exclude knowingly made false opinions from liability.

In any case, DeGenova's email was not her "legal opinion." In determining opinion-versus-statement-of-fact issues, the Ohio Supreme Court employs a totality of the circumstances analysis,

applying four criteria. *Scott v. News-Herald*, 25 Ohio St.3d 243, 250 (1986). "First is the specific language used, second is whether the statement is verifiable, third is the general context of the statement and fourth is the broader context in which the statement appeared." *Id.* (citations omitted). DeGenova satisfies none of these criteria to claim "opinion."

First, DeGenova chose her words in both her email and statements to the media. She could have made it clear she was expressing an opinion, but chose instead to use words expressing that she was stating facts, like

- "… I conducted an investigation into the circumstances surrounding the December 2, 2022 'termination' of your client, Ricky Morrison." (Am. Compl., Doc. 3, PageID#75).

- "My investigation revealed that the decision to terminate Mr. Morrison was made by the county administrator, not the Board of Commissioners, and that that [*sic*] the county administrator's action was not politically motivated." (*Id.*).

- "A Board of County Commissioners may only act as a Board and through formal resolution. Because Mr. Morrison's 'termination' was initiated by the county administrator and no Board actions was taken, Mr. Morrison's 'termination' is void ab initio." (*Id.*).

Second, DeGenova even offered explanations for her factual claims, again, insinuating she was discussing verifiable facts, not opinions. DeGenova chose to claim she conducted an "investigation" and what (factually) that investigation "revealed." By verifying the source of her information, she was making factual claims, not opinions.

Third, DeGenova's statements were made to cover up for other Defendants and, in that context, are statements of facts, not opinions. DeGenova could have chosen statements such as "In my opinion, I did nothing wrong" or "I don't think I did anything wrong," but those do not convey the desired strength and firmness she wanted to portray with her affirmative factual statements. In this context, DeGenova was asserting factual claims.

Fourth, in the broader context, DeGenova never stated or even hinted that she was expressing an opinion, and no reasonable person would view her statements as her "opinion."

Under the totality of the circumstances, DeGenova made statements of facts. Additionally, her statements are not "substantially true," but are entirely false. As stated throughout the Amended Complaint, DeGenova's statement of facts is completely contradicted by Defendant Traficanti's version of events. (Am. Compl., Doc. 3.)

## II. Law and Argument.

### A. In deciding a motion for judgment on the pleadings, the Court must accept all factual allegations in the complaint as true.

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true" and a "Rule 12(c) motion 'is granted when **no material issue of fact exists** and the party making the motion is entitled to judgment as a matter of law.'" *JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581–82 (6th Cir. 2007) (citations omitted). (emphasis added).

### B. Defendant DeGenova's December 13, 2022 email is not protected by the litigation privilege and she cannot be shielded by absolute immunity.

#### 1. DeGenova's December 13, 2022 email was not created during the course of any judicial proceeding; rather, it contained "extrajudicial statements" that fail to meet the legal criteria for litigation privilege and absolute immunity.

"The litigation privilege provides absolute immunity to parties, witnesses, lawyers, and judges from future lawsuits for ***statements made during and relevant to judicial proceedings***." *Reister v. Gardner*, 164 Ohio St.3d 546 at ¶ 8 (2020) (citations omitted) (emphasis added). DeGenova published her December 13, 2022 email before the December 23, 2022 judicial proceeding commenced. (Compl., Doc. 1; Am. Compl., Doc. 3, PageID#76–77.) Thus, the false and fraudulent statements contained in the email are considered "extrajudicial statements," which are defined as "those statements not submitted as evidence, as a pleading, during oral argument or in any other court document…" *Michaels v. Berliner*, No. 20136, 2001 WL 111582, at *3 (9th Dist. 2001).

The litigation privilege "is not without limits" and "does not give a person *carte blanche* to

defame another on the mere condition that a judicial proceeding is mentioned in, or somehow connected to, the defamatory statement." *Michaels v. Berliner*, 119 Ohio App.3d 82, 87–88 (9th Dist. 1997). Only "[w]ithin strict limitations" and under "greater scrutiny," has the litigation privilege been extended to extrajudicial communications. *Morrison v. Gugle*, 142 Ohio App.3d 244, 259–60 (10th Dist. 2001) (citations omitted).

For an extrajudicial communication—one not published during a judicial proceeding—to be afforded absolute immunity, it must (1) be made in the regular course of preparing for or conducting such a proceeding contemplated in good faith and under serious consideration; (2) be pertinent and material to the redress or relief sought; *and* (3) be published *only to persons who are directly interested in the proceeding. Michaels*, 119 Ohio App.3d at 88; referencing, *Theiss v. Scherer*, 396 F.2d 646, 648 (6th Cir. 1968) (emphasis added); *see also Morrison*, 142 Ohio App3d at 260; *Escue v. Sequent, Inc.*, No. 2:09-cv-765, 2010 WL 3365933, at *16 (S.D. Ohio 2010) (applying the *Michaels* test); *Hensley v. Wester Chester Twp.*, 1:21-cv-373, 2022 WL 4621432, at *10 (S.D. Ohio 2022) (applying *Michaels*). DeGenova's email satisfies none of these three required criteria, much less all of them.

First, DeGenova's email was not made in the course of preparing for or conducting a proceeding because no proceeding existed or was contemplated. (Am. Compl., Doc. 3, PageID#76–77). Again, she published her email before suit was filed.

Second, DeGenova's email was not "pertinent and material" to the matter. (Am. Compl., Doc. 3, PageID#77.) "To be pertinent and material it must tend to prove or disprove the point to be established, and ***have substantial importance or influence in producing the proper result***." *Surace v. Wuliger*, 25 Ohio St.3d 229, 231 (1986), quoting *Mauk v. Brundage*, 68 Ohio St. 89, 97 (1903) (emphasis added). DeGenova's email is not "pertinent and material" because the statements contained in it are false and fraudulent, and she acted deliberately to cover-up Defendants' wrongdoing. (Am. Compl., Doc. 3, PageID#75–79, 88–89, 91–93, 94–95, 96–97, 98–99, 100–01.)

Her dishonest email flunked the requirement of "influenc[ing] in producing the proper result."

Third, DeGenova published her email to the media in direct violation of the third criterion. (Am. Compl., Doc. 3, PageID#76–77.) The media aren't "persons who are directly interested in the proceeding." *Cf. generally Michaels v. Berliner*, 119 Ohio App.3d 82 (9th Dist. 1997); *Morrison v. Gugle*, 142 Ohio App3d 244 (10th Dist. 2001); *Escue v. Sequent, Inc.*, No. 2:09-cv-765, 2010 WL 3365933 (S.D. Ohio 2010); *Hensley v. Wester Chester Twp.*, 1:21-cv-373, 2022 WL 4621432 (S.D. Ohio 2022).

Having failed to establish the criteria required under the *Michaels* test, Defendant DeGenova cannot avail herself of the litigation privilege and absolute immunity.[7]

> **2. Even if DeGenova's email were made during or as part of a judicial proceedings, litigation privilege does not cloak DeGenova with absolute immunity for making false and fraudulent statements in violation of the professional-conduct rules.**

The Supreme Court has warned that attorneys don't have carte blanche to defame others:

> We make clear that Ohio law imposes no blanket prohibition on an attorney's communications to the media. Attorneys and their clients retain a panoply of First Amendment rights and are free to speak to the public about their claims and defenses provided that they do not exceed the contours of protected speech and ethical rules that impose reasonable and necessary limitations on attorneys' extrajudicial statements. See Prof.Cond.R. 3.6 (internal quote omitted). Thus, while we do not muzzle an attorney representing a party in a proceeding, attorneys are not given carte blanche to defame others under the guise of litigation.

*Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366 at ¶ 90 (2012).

DeGenova's false and fraudulent statements violated the Ohio Prof. Cond. R. 4.1:

> In the course of representing a client a lawyer shall not knowingly do either of the following:
>
> (a) make a false statement of material fact or law to a third person;
>
> (b) fail to disclose a material fact when disclosure is necessary to avoid assisting an *illegal* or *fraudulent* act by a client.

---

[7] Defendant's Motion fails to address or otherwise mention the *Michaels* test and DeGenova's failure to satisfy its three criteria, despite Plaintiff's responsive letter to her counsel addressing this law. Nor does Defendant's Motion mention or address the following arguments.

Ohio Prof. Cond. R. 4.1 (emphasis in original). DeGenova violated both. (Am. Compl., Doc. 3, PageID#75–77). She can't violate the ethics rules and then claim litigation privilege as a shield.

> **3. Even if DeGenova's email were made during or as part of a judicial proceeding, the litigation privilege does not cloak DeGenova with absolute immunity for her "act" of disseminating her false and fraudulent statements to the media.**

The litigation privilege provides absolute immunity for "statements" made during and relevant to judicial proceedings, but not for "actions." *Reister v. Gardner*, 164 Ohio St.3d. 546 at ¶ 10, citing *Willitzer v. McCloud*, 6 Ohio St.3d 447, 448–49 (1983). DeGenova's act of publishing her email to the media destroys her claim to litigation privilege and absolute immunity. She didn't perform this act as part of litigation; it was a political stunt to shield the commissioners from the negative public onslaught—as a gratuity for their past, and to garner their future, support in the upcoming and highly contested Mahoning County Democratic Party appointment meeting. (Am. Compl., Doc. 3, PageID#75–79, 88–89, 91–93, 94–95, 96–97, 98–99, 100–01.) It was done not in anticipation of litigation but to cover Defendants' illegal act and to help her gain the prosecutor seat.

> **4. Morrison alleges that DeGenova published her December 13, 2022 email to the media to cover up for other Defendants, gaslight Morrison and deter him from exercising his rights, and falsify government records others would rely on— genuine issues of material fact exist about that.**

DeGenova claimed "… the material circumstances surrounding its [her December 13, 2022 email] transmission are not in dispute." (Def.'s Mot., Doc. 18, PageID#284.) DeGenova's reasons for publishing her email to the media *are* in dispute and genuine issues of material fact exist.

In her Answer, Defendant DeGenova claimed "…she provided the media a copy of her December 13, 2022 email to Attorney Chandra in response to *earlier* public records requests made for the same…" (emphasis added). (Answ., Doc. 7, PageID#153, 173, 175, 177). In the Factual Background section of her motion, she again claimed "the Ohio Public Records Act…obligated Prosecutor DeGenova to produce a copy of her December 13, 2022 email in response to public records requests made by members of the media." (Def.'s Mot., Doc. 18, PageID#281.)

But as stated above, Defendants' public-records production show no such media public-records requests existed. If they did, DeGenova would have produced them. She could have attached them to her Answer, as she did with other records, but she didn't. (Def.'s Answ., Doc. 7.) This is why the parties must go through discovery. Genuine factual issues exist.

And DeGenova's "obligated" claim is only stated in her Answer—not the Amended Complaint. Again, "A court can only grant a Rule 12(c) motion based on the factual matter asserted in the complaint, and therefore 'when material issues of fact are raised by the answer and the defendant seeks judgment on the pleadings on the basis of this matter, his motion *cannot* be granted.'" *Shibe v. Yaskawa Am., Inc.*, Civil Action No. 3:19-cv-384-DJH-RSE, 2020 WL 3511588, at *1 (W.D. Ky 2020), quoting § 1368 Judgment on the Pleadings—Practice Under Rule 12(c), 5C Fed. Prac. & Proc. Civ. § 1368 (3d ed.) (emphasis added). Yet that's precisely what DeGenova tries to do here—obtain judgment based solely on her self-serving and unsubstantiated Answer.

Furthermore, DeGenova was not "obligated" to provide the media with her December 13, 2022 email. Rather, she did so on her volition. Ohio Rev. Code § 149.43(A)(1)(g) provides, in relevant part, "'Public record' does **not** mean any of the following…Trial preparation records…" (Emphasis added). Ohio Rev. Code § 149.43(A)(4) defines "Trial preparation record" as "any record that contains information that is specifically compiled *in reasonable anticipation of*, or in defense of, a civil or criminal action or proceeding, including the independent thought processes and personal trial preparation of an attorney." (Emphasis added.)

Since DeGenova was neither "obligated" nor required to provide her email to the media in response to any purported public records request, Plaintiff Morrison's position is confirmed that "…Defendant DeGenova then sent the statement in the email to the media for no legitimate reason." [Footnote omitted]. (Am. Compl., Doc. 3, PageID#76–77.)

Also, DeGenova alleges that "…she provided the media a copy of her December 13, 2022

Page 11 of 21

email to Attorney Chandra in response to *earlier* public records requests made for the same…"

(Emphasis added). (Def.'s Answ., Doc. 7, PageID#153, 173, 175, 177.) By her own admission, DeGenova's email did not exist at the time of the media's purported public records requests. Ohio's Public Records Act does not require DeGenova to provide a document that does not exist at the time of the request; nor does it require her to provide a subsequently created record. DeGenova provides no authority to the contrary because it doesn't exist. Such an obligation would make no legal sense because it would place public officials into a never-ending cycle of obligation to check and comply with old records requests as new responsive records are created. Again, DeGenova published her defamatory statement on her own volition, which reinforces Plaintiff's position that she "sent the statement in the email to the media for no legitimate reason." [Footnote omitted]. (Am. Compl., Doc. 3, PageID#76–77.)

5. **Genuine issues of material fact exist as to *what* Defendant DeGenova disseminated in her December 13, 2022 email to the media.**

In the Factual Background section of Defendant's Motion, DeGenova claims she provided "… a **copy** of her December 13, 2022 email…" to the media. (Def.'s Mot., Doc. 18, PageID#281 ((emphasis added)). Then, in the Legal Analysis section, DeGenova claimed "… the contents of the written communication by Prosecutor DeGenova … are not in dispute." (Def.'s Mot., Doc. 18, PageID#284). But the contents of what DeGenova published to the media *are* in dispute and raise genuine issues of material fact.

The WFMJ article on this topic provided a *version* of Defendant DeGenova's email, which contained differences from the version sent to Plaintiff's counsel—casting doubt on what version Defendant DeGenova published to the media. (Am. Compl., Doc. 3, PageID#76–77, ¶ 68 n. 10.) The WFMJ version of the email did not contain the "Subject to Evidence Rule 408" pronouncement and contained different language in at least one sentence.

The version of the email sent to Plaintiff's counsel contained the following sentence:

> My investigation revealed that the decision to terminate Mr. Morrison was made by the county administrator, not the Board of Commissioners, and that that [*sic*] the county administrator's action was not politically motivated.

(Am. Compl., Doc. 3, PageID#75, ¶ 63) (included in Am. Compl., but not original email). But the version of the email reprinted in the WFMJ article stated that sentence as follows:

> My investigation revealed that the decision to terminate Mr. Morrison was made by the county administrator, not the Board of Commissioners, and that the county administrator's action was not politically motivated.

(Am. Compl., Doc. 3, PageID#76–77, ¶ 68 n. 10). These differences display a genuine issue of material fact as to what version DeGenova published to the media. Did she forward the same version and the media removed the "408" language and corrected her typo? Or did she edit on her own and then publish it? Or did she create and send entirely new emails to the media? Thus, at least two versions of DeGenova's December 13, 2022 email exist—one sent to Plaintiff's counsel and others sent to the media. Only discovery can address these genuine factual issues.

Similarly, the *Vindicator* article on this topic stated what Defendant DeGenova "said" in one paragraph (presumably in her interview with the reporter) and in another paragraph the article stated what DeGenova "wrote" in her email—again casting doubt on what exactly DeGenova published to the media and in what form. (Am. Compl., Doc. 3, PageID#76–77, ¶ 68 n. 10.)

DeGenova cannot have it both ways—she cannot claim in one breath that she provided her email to the media in response to a (non-existent) prior public-records request and in another breath claim the email is shielded by absolute immunity because it was prepared in anticipation of litigation. (Def.'s Mot., Doc. 18, PageID#282–286.) If the email was prepared in anticipation of litigation, it is not a public record and is not required to be provided pursuant to a public-records request. Ohio Rev. Code § 149.43(A)(1)(g) and (A)(4) (trial-preparation records). On the other hand, if the email is a public record that was required to be turned over, it was not prepared in anticipation of litigation and is not shielded by absolute immunity. DeGenova's contradictory arguments created genuine

issues of material fact—was the email a public record or was it prepared in anticipation of litigation, and why exactly did she provide her email to the media. Defendant's Motion is based on her conflicting claims about her December 13, 2022 email—which can be resolved only through discovery—barring judgment on the pleadings.

### 6. DeGenova's December 13, 2022 email contained false and fraudulent statements.

DeGenova also incorrectly asserts "Here, none of Prosecutor DeGenova's statements in her December 13, 2022 email were 'false' [or] 'defamatory'…" (Def.'s Mot., Doc. 18, PageID#284.) This is untrue, as the Amended and Supplemental Complaint details. (Am. Compl., Doc. 3, PageID#75–79, 88–89, 91–93, 94–95, 96–97, 98–99, 100–01.) With this, she yet again creates genuine issues of material fact, which required discovery and bar judgment on the pleadings.

### C. Judgment on the pleadings is not warranted because DeGenova failed to satisfy the requirements for qualified litigation immunity.

To claim qualified litigation privilege, a defendant must prove (1) she acted in good faith; (2) there was an interest to be upheld; (3) the statement was limited in its scope to this purpose of upholding the interest; (4) the occasion was proper; and (5) the publication was in a proper manner and to proper parties only. *Hahn v. Kotten*, Ohio St.2d 237, 244 (1975). If all five requirements are met, the qualified litigation privilege can still be overcome by showing the defendant acted with actual malice, such as ill-will, spite, grudge, or other ulterior motives. *Id.* at 248.

Under prong one, DeGenova did not act in good faith. Her December 13, 2022 email contained false and fraudulent statements about why Morrison was fired. Her allegations contrast with the reasons Commissioner Traficanti repeatedly stated. DeGenova knew before she wrote and published her email to the media—from her conversation with Traficanti—that Rimedio-Righetti and Ditzler fired Morrison in retaliation for his having exercised his First Amendment rights.

Under prong two, the interest to be upheld here, was the proper reinstatement of Plaintiff and vindication of his rights. By writing and disseminating false and fraudulent reasons, these

Page 14 of 21

interests were not upheld and further victimized Plaintiff.

Under prong three, DeGenova's email was not limited in scope to the proper reinstatement of Plaintiff and vindication of his rights, but went beyond this limited scope to cover Defendants' unlawful behavior. "A normal lawyer, realizing the County's exposure, would have simply acknowledged Morrison's reinstatement. The lawyer wouldn't have claimed to have 'investigated' yet promulgate a factually and legally false narrative contradicting the account of one statutory-client officeholder—Commissioner Traficanti, and scapegoating another, County Administrator Tillis." (Am. Compl., Doc. 3, PageID#76). As shown above, false statements violate Prof. Cond. R. 4.1.

Under prong four, there is never a proper occasion to write and disseminate a false and fraudulent writing. As shown above, DeGenova did not publish her email to the media in response to prior public-records requests but did so on her own and for no legitimate reason.

Under prong five, the media were not proper parties and DeGenova's dissemination of her email to them was improper. Again, as stated above, genuine issues of material fact exist as to what version of the email DeGenova published to the media, as well as how and why she did so.

DeGenova satisfies no qualified-litigation-immunity requirements. Also, DeGenova acted with actual malice and is not entitled to immunity. (Am. Compl., Doc. 3.)

**D. Judgment on the pleadings is not warranted because DeGenova violated Morrison's constitutional rights and took adverse actions against him.**

A 42 U.S.C. § 1983 claim requires (1) "the deprivation of a right secured by the Constitution or laws of the United States" and (2) "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003), quoting *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995). Here, Plaintiff Morrison pleaded sufficient facts that (1) he was deprived of his First Amendment rights by Defendants' retaliatory firing of him and their ensuing attempts to cover-up their wrongdoing and (2) Defendants were acting under color of state when committing these acts; and Defendant's Motion includes no such argument.

Page 15 of 21

"To establish a *prima facie* case of First Amendment retaliation, a public employee must show that (1) he engaged in constitutionally protected speech or conduct; (2) the employer took an adverse action against him that would deter an ordinary person from engaging in that conduct; and (3) the protected speech was a substantial or motivating factor in the adverse action." *Laster v. City of Kalamazoo*, 746 F.3d 714, 733 (6th Cir. 2014), citing *Scarbrough v. Morgan Cnty. Bd. of Educ.,* 470 F.3d 250, 255 (6th Cir. 2006); *Farhat v. Jopke,* 370 F.3d 580, 588 (6th Cir.2004).

Under prong one, DeGenova concedes "Plaintiff may have 'engaged in constitutionally protected activity'…" and offers no further argument that Plaintiff did not engage in said constitutionally protected activity. (Def.'s Mot., Doc. 18, PageID#288).

Under prong two, DeGenova incorrectly claims she "…did not commit an 'adverse action [that] caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity.'"[8] (Def.'s Mot., Doc. 18, PageID#288.) She tries to divert attention from Defendants' wrongdoing by claiming that because Plaintiff was reinstated, no harm was done. She ignores the import of the supplemental complaint allegations.

But a First Amendment–retaliation adverse action is one that would chill a person of ordinary firmness from continuing to exercise free speech. *Buddenberg v. Weisdack*, 939 F.3d 732, 739 (6th Cir. 2019). "[E]ven an act of retaliation as trivial as failing to hold a birthday party for a public employee could be actionable when intended to punish her for exercising her free speech rights." *See*, *e.g.*, *Rutan v. Republican Party of Ill.*, 868 F.2d 943, 954 n.4 (7th Cir. 1989). And whether an action is adverse is "context specific." *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 821 (6th Cir. 2007), citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). Just because the original wrong was (partially) righted doesn't excuse the original wrong. And the ensuing cover-up

---

[8] DeGenova's counsel never raised this issue in his request-for-dismissal letter. *See* D. Downey Ltr to S. Chandra re Dismissal (2/13/23), attached as Ex. 7. **The Court should disregard the argument now** because it violates this Court's standard Case Management Conference Scheduling Order.

and lies only exacerbated the original wrong—they didn't alleviate it.

Here, within days of attending a public elections-board hearing as a private citizen and sitting with and talking to Commissioner Rimedio-Righetti's opponent, Rimedio-Righetti and Ditzler fired Morrison. When their plan was foiled and Morrison's counsel demanded his immediate and unconditional reinstatement, DeGenova concocted and published a story to cover for her cohorts' wrongdoing, gaslight Morrison, and mislead the public. As prosecutor, DeGenova owes a duty to the public—not wrongdoers. Morrison didn't deserve false and fraudulent excuses. Defendants' (including DeGenova's cover up) conduct was so chilling that, even after Morrison was reinstated, he didn't attend the next elections-board public hearing because he was so scared of being retaliated against and losing his job—again. (Am. Compl., Doc. 3, PageID#82.)

DeGenova's false and fraudulent statements, in which she tried to cover-up Defendants' misconduct, is an adverse action as detailed above. The gaslighting would cause a person of ordinary firmness from exercising rights—and it had just that effect on Morrison. DeGenova's depiction of Plaintiff led to immediate and foreseeable retribution from others, including:

- DeGenova's cover-up enabled Rimedio-Righetti and Ditzler to publicly ridicule Plaintiff and paint him as a liar and brand this lawsuit a "circus." (Am. Compl., Doc. 3, PageID#83–85.)

- "Even upon his return to work, Morrison has been faced with fear, increased stress, and uncertainty. He is concerned about who all was involved in his unlawful termination and ensuing cover-up. He constantly reasonably worries that these same authority figures will plot to cause his demise." (*Id.*, PageID#86.)

- "And upon Morrison's return to work on December 14, 2022 following his retaliatory firing, one co-worker orally castigated and harassed him, and acted in a physically threatening manner. On or about December 20, 2022, other co-workers got up and left a lunchroom as soon as Morrison sat down. All of this loss of reputation, stigma, and misery was created by Defendants' actions—including their actions to perpetuate falsehoods about their conduct— and was foreseeable." (*Id.*, PageID#86–87.)

- "Morrison was victimized by Defendants' retaliatory conduct. And then Defendants' efforts to cover up their retaliation through falsehoods exacerbated his victimization." (*Id.*, PageID#87.)

DeGenova could have said nothing. She could have upheld her duty as prosecutor and exposed

Defendant Rimedio-Righetti and Ditzler's unlawful behavior. She could have represented the public she serves. She could have stopped all this. She didn't. She acted as a politician—not a prosecutor.

Under prong three, DeGenova argues, since no adverse action was taken, she was not motivated by Plaintiff's exercise of his constitutional rights. (Def.'s Mot., Doc. 18, PageID#288–289). Having established above that DeGenova engaged in adverse actions, Plaintiff will address the many motivations guiding DeGenova's actions.

Aside from her self-serving Answer and claims in Defendant's Motion, DeGenova offers no evidence to support her argument. Rather, she argues that Plaintiff alleged her motivation depended solely on obtaining "continued support for her appointment as prosecutor…" (Def.'s Mot., Doc. 18, PageID#289, quoting Am. Compl., Doc. 3.) While that's true in part, the Amended and Supplemental Complaint also alleged other motivations that DeGenova failed to disclose, like

- "[A]ttempt[ing] to save face and rehabilitate the public's view of Defendants' illicit behavior." (Am. Compl., Doc. 3, PageID#76–77.)

- [I]nterfering with Plaintiff's truth-seeking abilities and prevent the truth from emerging. (*Id.*, PageID#77.)

- Preventing others, like Defendant Traficanti, from publicly speaking the truth on the topic, by establishing the (false) party line that Defendants did nothing wrong. (*Id.*, PageID#77.)

- Limiting the County's liability exposure. (Am. Compl., Doc. 3, PageID#76.)

- Preventing Plaintiff from engaging in future constitutionally protected activities, like attending future public hearings and supporting other candidates—which worked because Plaintiff did not attend the next elections-board hearing. (*Id.*, PageID#77, 82.)

- "[G]aslight[ing] Morrison and mak[ing] more difficult his ability to obtain redress for the harms done to him." (*Id.*, PageID#88–89).

DeGenova's self-serving effort to ignore allegations and limit her multiple motivations into only a single one reveals genuine factual issues of material fact and bars judgment on the pleadings.

Judgment on the pleadings is improper because Plaintiff has alleged sufficient facts to establish First Amendment retaliation. DeGenova is not entitled to qualified immunity in her

Page 18 of 21

personal capacity because she violated Plaintiff's clearly established constitutional rights. Nor is

DeGenova entitled to judgment in her official capacity because, as the highest ranking official in the

prosecutor's office, she's a policymaker.

### E. The Court should deny judgment on the pleadings because DeGenova's statements to the media following the lawsuit's filing were defamatory.

#### 1. The defamation claim is based on DeGenova's false statements published after the filing of the lawsuit, not on her false and fraudulent statements contained in her December 13, 2022 email.

Defendant's Motion completely avoids the point on this argument—which is based entirely

on the **incorrect** premise that Claim 11 (defamation) is based on her December 13, 2022 email.

(Def.'s Mot., Doc. 18, PageID#293–294.) To be clear, Claim 11 (defamation) is ***not*** based on

DeGenova's December 13, 2022 email, but on her statements to the media on December 28, 2022,

following the December 23 filing of the lawsuit.

Were the defamation claim based on DeGenova's December 13, 2022 email, then it would

have been included in the original December 23 complaint. The defamation claim is based on her

post-filing statements, which is why the complaint was supplemented under Fed. R. Civ. P. 15 to

add the new claim. Defendant's motion doesn't address DeGenova's post-filing statements. She

can't start that argument on reply. So Claim 11 (defamation) is not subject to judgment now.

Claim 11 (defamation) provides, in part:

> DeGenova published and caused to be further published false statements that Morrison's firing was not politically retaliatory and that "categorically den[ied] each allegation of wrongdoing" against her. [Footnote omitted]. DeGenova also claimed that the allegations against her showed she was the "target of multiple factions and interest groups," [footnote omitted] baselessly, falsely, and maliciously depicting Morrison as some sort of fringe extremist with an agenda. These statements, too, falsely accused Morrison of lying about what Traficanti and Landfried had disclosed to him and claimed that Morrison's wholly unjustified firing was justified.

(Am. Compl., Doc. 3, PageID#109.) The footnotes omitted above both cite the December 28, 2022

*Vindicator* article published five days after the original Complaint was filed. (Compl., Doc. 1.)

Defendants' post-filing defamatory statements prompted the December 30, 2022 Amended and Supplemental Complaint filing. (Am. Compl., Doc. 3.) By denying that Defendants violated Plaintiff's constitutional rights, DeGenova painted him to the public as a petulant crybaby, defaming him in the same way Donald Trump is alleged to have defamed writer E. Jean Carroll by publicly denying her sexual-assault allegations. (That matter is in trial right now.)

Claim 11 (defamation) is based on her statements to the media after the filing of the lawsuit, rather than her email. The Amended Complaint say so. DeGenova's counsel raised this same canard is his dismissal-demand letter[9] and Plaintiff's response letter set him straight.[10] Despite this, DeGenova persists in her false claim that the defamation claim is based on her December 13, 2022 email. Defendant's Motion doesn't mention her post-filing-defamatory statements to the media on which Claim 11 (defamation) is based. Judgment on the pleadings on Claim 11 is thus improper.

**2. DeGenova baselessly tries to lump all claims into one category and incorrectly cloak them in immunity.**

Finally, DeGenova tries to shoehorn all other claims into one argument. Aside from stating only one part of the immunity statute, her motion offers no real argument or analysis. It asserts without citation that, because immunity exists in the law, she is automatically entitled to it regardless of the egregiousness of her actions. That isn't the law. This argument should be denied.

### III. Conclusion

The Court should thus deny Defendant DeGenova's motion for judgment on the pleadings. Alternatively, Plaintiff requests leave to amend to correct any complaint deficiencies.

---

9 *See* D. Downey Ltr to S. Chandra re Dismissal (2/13/23), attached as Ex. 7.
10 *See* M. Desmond Response to D. Downey re DeGenova dismissal request (2/28/23), attached as Ex. 8.

Dated: April 26, 2023

*/s/ Subodh Chandra*
Subodh Chandra (0069233)
Donald P. Screen (0044070)
THE CHANDRA LAW FIRM LLC
The Chandra Law Building
1265 West 6th Street, Suite 400
Cleveland, Ohio 44113
216.578.1700 (p) / 216.578.1800 (f)
Subodh.Chandra@ChandraLaw.com
Donald.Screen@ChandraLaw.com

Respectfully submitted,

*Per consent*
Martin P. Desmond (0077377)
Attorney at law
P.O. Box 14052
Youngstown, OH 44514
330.559.4505 (p)
Mpmd4@hotmail.com

*Attorneys for Plaintiff Ricky Morrison*

### CERTIFICATIONS

I certify that Plaintiff's counsel responded to Defendant DeGenova's counsel request for dismissal and provided explicit reasons in writing for refusing to do so in accordance with this Court's standard Case Management Scheduling Conference Order.

I certify that the Memorandum in Support attached to Plaintiff's Response in Opposition to Defendant DeGenova's Motion for Judgment on the Pleadings adheres to the 20-page limit in accordance with Loc.R. 7.1(f).

I certify that on this 26th day of April 2023, a copy of *Plaintiff's Opposition to Defendant DeGenova's Motion for Judgment on the Pleadings* was filed electronically under Fed. Civ. R. 5(b)(2)(E). Notice of this filing will be sent via operation of the Court's electronic-filing system to all parties reflected on the electronic-filing receipt.

*/s/ Subodh Chandra*
One of the attorneys for Plaintiff Ricky Morrison